Dresser agt. Shufeldt.

---

## SUPREME COURT.

### DRESSER agt. SHUFELDT.

A creditor may impeach the discharge of a debtor, obtained under the insolvent laws, for fraud; but he can not disregard it and issue execution on his judgment, and sustain the execution and levy by affidavits of the fraud.

The court will not try the question of fraud on motion, but will set aside such an execution and leave the plaintiff to his action on the judgment; and will not allow the levy to be retained as security.

*New York Special Term,* 1852. The plaintiff obtained judgment for $148·68 in May 1845, against the defendant, and issued

execution thereon. Since then no other execution was issued until the 27th of May last. In the mean time the defendant had obtained a discharge from his debts under our insolvent law. The last execution was issued without any application to the court, and is now attempted to be sustained on the alleged ground that the discharge was fraudulently obtained. The execution was stayed on the defendant giving a bond with sureties conditioned to pay such sum as may be recovered by the plaintiff in any action he may be permitted to bring by order of this court.

MITCHELL, Justice.—On the question whether an execution can be issued under § 458 of the Code, without leave of the court, after five years from the rendering of the judgment, provided an execution had been issued and returned within that time, MASON, J. decided in the affirmative in 4 *How. Pr. R.* 257, Pierce vs. Crane; a different opinion seems to be expressed by HARRIS, J. (*id.* 101-2), in the Catskill Bank agt. Sanford. I am willing to leave that still an open question.

In 1 *How. Pr. R.* 181, Bangs vs. Strong, a motion was made to set aside an execution on a judgment recovered in 1838, on the ground that the defendant had been discharged under the bankrupt law; the motion was opposed, as here, on the ground that the discharge was obtained by fraud.

Judge JEWETT admitted that the court ought not to try the validity of the discharge on affidavits, but thought that justice required that the plaintiff should not lose a lien acquired by levy without an opportunity to try the validity of the discharge; and granted the motion to discharge the execution unless the plaintiff should bring an action on the judgment within sixty days; and ordered the execution and levy should stand as security for the final result of the suit.

In 9 *Wend.* 431, Russell vs. Packard, the defendant being arrested on a *ca. sa.* moved to set it aside on the ground of his having obtained an insolvent discharge. The court (Sutherland, J.) discharged him from his arrest and left the plaintiff to his action on the judgment.

In 1 *Cowen*, 165, Baker vs. Taylor, the defendant having obtained his discharge after verdict and before judgment, was dis-

charged from a *ca. sa.* on motion. The court intimated that if fraud was alleged the court would *open the cause* so far as to give the plaintiff a chance to try that question, leaving the judgment (but not the *ca. sa.*) to stand as security.

In 1 *Cowen*, 50, Reed vs. Gordon, the defendant was discharged under the insolvent law; afterwards he was held to bail on a debt contracted before his discharge, the plaintiff alleging that the discharge was obtained by fraud, and that the judge granting it had no jurisdiction.

The court say, " we never can try either fraud or irregularity upon affidavits. We find this settled by repeated decisions, which were referred to upon the argument," and the defendant was discharged on common bail. In a note to page 51, the learned reporter says: " The difference between the practice of the English courts arises from the *conclusiveness* of our discharge as *evidence* (1 *R. L.* 464), which the English legislature have not extended to their insolvent laws." Our United States bankrupt law, § 4, was similar to (though not the same as) our state law in this respect.

In 20 *John. R.* 21, Taylor vs. Williams, the court noticed that in applications for an insolvent discharge the creditors have *their day to investigate and oppose* at the hearing before the judge. That if the specification of the debt is such as to apprise creditors of its general grounds, it would be sufficient; " and that it might lead to fraud on the part of creditors, if they were permitted to lie by and not oppose the discharge, and then, *after the debtor has acquired new credit*, to fall upon him and *strip him of property* with *which new creditors may have intrusted him.*"

These remarks equally apply to this case; the property here may have been acquired on credit, and that founded on the discharge thus obtained, and perhaps not opposed by the old creditors.

In 9 *John. Rep.* 259, Noble vs. Johnson, the defendant was in custody, having been surrendered by his bail and moved for his discharge, having since obtained a certificate of discharge under the insolvent law. Fraud was alleged by the plaintiff. The discharge was granted, the court saying: " We will not try the validity of a discharge under the insolvent act by affidavits.

It was so decided on several similar applications at the las term. *The plaintiff must resort to his action.*"

Thus the court uniformly in all cases that came before it, until the case of Bangs agt. Strong, recognized the conclusiveness of the discharge, where a motion was made before them, and compelled the plaintiff to resort to his action if he intended to dispute it on the ground of fraud.

It is right that it should be so; the plaintiff has had his opportunity to oppose the discharge on the ground of fraud. If he attempted to oppose it on that ground and failed, it is strong evidence that his charges are unfounded; if he made no opposition the evidence is equally strong. He has had his day in court to establish that very point—a judgment has been passed upon it which the statute declares " shall be conclusive evidence of the proceedings and facts therein stated " (2 *R. S.* 38, § 19, and *id.* 21, § 25).

The court expressly says it will not try the question of fraud on affidavits, and if they do not try it, then the discharge remains as conclusive evidence of its validity until impeached in the way prescribed by the court, namely, by action. How it can be conclusive evidence of its own validity and yet be disregarded and an execution be allowed to be issued and levied and retained, while the court has no proof of the fraud, I can not comprehend. The court must either take the proofs on affidavits and decide accordingly, or set aside the execution and leave the plaintiff to his action, or it will give no effect to a record which the law declares to be conclusive evidence; and which is conclusive until effectually impeached. To allow the execution to go, and to refuse to try the question of fraud, is to make the mere charge of fraud more potent on the *motion* than the conclusive record.

It is true the creditor may impeach the discharge for fraud, and if he succeeds it will be void (2 *R. S.* 23, § 35). But if the court will not, on motion, hear the proofs of fraud or innocence, it must treat the discharge as valid. There can be no difference in principle (as Justice Jewett supposed) between a motion to set aside a *ca. sa.* and a motion to set aside a *fi. fa.* If the defendant is honest, and has acquired property since his discharge,

Dresser agt. Shufeldt.

or been trusted with it, he is as much entitled to use it, as he is to the freedom of his person. The discharge is equally effectual to his goods as to his person, and if contaminated by fraud equally inoperative over each.

The revisers seem not to have approved the practice of discharging a defendant from *mesne process* merely because he had obtained an insolvent discharge, but required notice to be given to the plaintiff before he should be so discharged; but then they also required the question of fraud to be passed upon by the officer to whom the application for such discharge should be made (2 *R. S.* 38, § 21, 22); and they did not extend the requirement of notice to cases of executions, but left them to stand as before (2 *R. S.* 23, § 34), and the sheriff could discharge one in prison on the mere production of the discharge (*id.*).

Why should the judgment creditor have an advantage over all other creditors? they can not reach the defendant's property until they establish the fraud; why should he? To give him the preference holds out a temptation to attach such property as this—a vessel just going to sea—and hold it until in a regular course of litigation it shall be decided whether the defendant has been guilty of fraud or not; in the mean time the property being consumed by its own nature and the costs of keeping it. A defendant might better pay the debt, than submit to such a delay; and creditors knowing this would speculate on his fears and issue execution with little or no foundation for their suspicions. I am satisfied that " reason and equity," appealed to by Judge Jewett, require the courts to pass on the question of fraud on the motion, or (as the law was before uniformly established) set aside the execution and leave the plaintiff to his action on the judgment.

I would still readily adopt the decision of Justice Jewett if I could, on some principle, reconcile it with the uniform course of former decisions, but I can not.

It is against principle to allow a matter which ought be put in issue and tried by a jury, and which lies at the foundation of the plaintiff's cause of action, and without establishing which he can not succeed in his suit to be assumed by him, and to permit him without proving it or alleging it, to get at once the fruit of a verdict and judgment on the issue, by issuing an execution,

which is irregular if the matters to be affirmatively proved by him are not true.

In my opinion the execution was irregularly issued, and should be set aside; the defendant stipulating not to commence any action on account of the execution, and the plaintiff should be left to his action on the judgment.