CLINTON PETROLEUM SERVICES, INC. *v.*
NORRIS ET AL. TRUSTEES OF CLIMATE
SPECIALISTS, INC.

[No. 152, September Term, 1971.]

*Decided December 14, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, FINAN, SINGLEY and SMITH, JJ.

*Joseph A. Mattingly* for appellant.

No brief filed on behalf of appellees.

BARNES, J., delivered the opinion of the Court.

The principal question in this appeal is whether the
Circuit Court for Prince George's County (Bowie, J.)

erred in holding that the appellant, Clinton Petroleum Services, Inc. (Clinton), a judgment creditor of Joseph J. Norris and Anna Drue Norris, his wife, trustees of Climate Specialists, Inc., a dissolved Maryland Corporation, two of the appellees, had not proved in supplementary proceedings that the dissolved corporation (Climate) had any equitable interest in a lot in Prince George's County, improved by a dwelling, known as Lot 1, Block C in a subdivision known as Silver Valley (subject property). We have concluded that Judge Bowie did not err and we will affirm his order of March 30, 1971, refusing to appoint a receiver, denying other relief in the supplementary proceedings and dismissing the proceedings as to Mr. and Mrs. Norris and Ronald V. and Doris N. Hoffmann, the record owners of the subject property, the remaining appellees.

The facts are not in dispute. Clinton had furnished oil products to Climate on open account and, not having been paid, sued Mr. and Mrs. Norris, as trustees of Climate— then dissolved—to recover the amount due. Judgment for $1,863.02 was obtained against Climate and Mr. Norris as trustee of Climate on May 28, 1970; and a consent judgment for that same amount was entered against Mrs. Norris as a trustee of Climate on July 16, 1970. The judgment not having been paid, a petition for supplementary proceedings was filed and supplementary proceedings were granted by the lower court on August 25, 1970. Later Clinton filed a petition to appoint a receiver to take title to the subject property, sell it and apply the proceeds to the payment of the judgment.

Prior to October 19, 1967, Mr. and Mrs. Norris owned the subject property as tenants by the entireties. A deed of trust on the subject property being in default, the property was sold at foreclosure proceedings to Mr. and Mrs. Hoffmann as tenants by the entireties—they being the highest bidders at the foreclosure sale—and a deed, dated October 19, 1967, was given to the Hoffmanns for the subject property by the trustees in the foreclosure case and duly recorded.

In 1969, Mr. and Mrs. Norris filed voluntary petitions in bankruptcy in the United States District Court for the District of Maryland. They did not state in their schedules filed in the bankruptcy case that they had any interest in the subject property.

At the hearing before Judge Bowie on March 30, 1971, Clinton produced one witness, Frank A. McCully, president of Clinton. Mr. McCully testified that he knew Mr. and Mrs. Norris and that he had a conversation with them in 1968 at a restaurant then owned by him. He told Mr. and Mrs. Norris that he had seen something in the local paper concerning a foreclosure and asked "How is that going to affect the house that you folks are living in?" Mr. Norris replied, "I have got that hid so nobody will get it." Mr. Norris, however, did not state how he had put the property beyond the reach of his creditors. Mr. McCully further testified that Mr. Hoffmann was an employee of Climate, having been its superintendent and general foreman. Mr. Hoffmann actually ran the operation of Climate because Mr. Norris "was on the outside building houses." Mr. Hoffmann took over after William Metcalf left, but was general foreman for only a short time "because after that the place just went to pieces."

Mr. McCully talked to Mr. Hoffmann in regard to "who owned this house." Mr. Hoffmann stated that he "actually had no interest in the house at all, that his name was only on the house because Norris had asked him to put his name on the house." Mr. Hoffmann did not tell Mr. McCully "for whom he was holding the house."

At the supplementary proceedings, Mr. McCully heard Mr. Norris state that he did not own the subject property and Mr. Hoffmann stated that he did not own it "so, the house apparently is in limbo. I don't know who owns the house." The schedules in bankruptcy of Mr. and Mrs. Norris were received in evidence and, as we have indicated, did not list any interest in the subject property as being owned by them.

On cross-examination, Mr. McCully stated that he did

not know that Climate ever owned any interest in the house. He reaffirmed that he "had no knowledge as to whoever owned the house. The house so far as the testimony is concerned is in limbo, nobody owns it. It may belong to the county, for all I know."

In reply to a question by the lower court, counsel for Clinton stated without contradiction that Mr. and Mrs. Norris still lived in the subject property.

Clinton contends that inasmuch as the Hoffmanns have testified that they do not own the subject property and Mr. and Mrs. Norris are estopped by the record in their bankruptcy case to claim any interest in the property, Climate is the only entity left which could have title to it and hence its trustees have that title which is available to pay the claims of the creditors of Climate.

The difficulty with this contention is, as the trial court pointed out, that there is no evidence in the case that Climate was ever in the title to the subject property or that any of its money or assets ever went into the property in any way. The facts that Mr. and Mrs. Norris owned all of the capital stock of Climate and that Mr. Hoffmann operated Climate's business for a short time do not indicate that the Hoffmanns were holding the legal title to the subject property for the benefit of Climate. Judge Bowie indicated that the testimony suggested that the Hoffmanns were holding the legal title for the benefit of Mr. and Mrs. Norris notwithstanding the bankruptcy schedules, but that there was nothing to show any interest whatever in Climate. The burden of proving the ownership of an interest in the property was on Clinton and it did not meet that burden in this case.

Clinton suggests that Climate or its trustees have peculiar means of knowing whether Climate had any interest in the subject property and hence they should be required to "come forward" with evidence to show that Climate did not own such an interest, relying upon *Lake v. Callis*, 202 Md. 581, 587, 97 A. 2d 316, 319 (1953). *Lake* involved a factual situation in which it had been established that the proceeds of a loan had been received

by the debtors appearing on a note and mortgage, as principal debtors, but claiming to have executed the documents for the accommodation of a co-maker corporation, and hence were sureties and not principals. One of the questions was whether the debtor had used the money received personally or not. Chief Judge Sobeloff, for the Court, stated:

> "They [the Appellees—Debtors] failed to show what happened to the proceeds of the mortgage loan. It is a rule grounded in common sense that the burden of proving a fact is on the party who presumably has peculiar means of knowledge enabling him to prove its falsity, if it is false."

The obvious difference between *Lake* and the present case is that in *Lake* the receipt of the proceeds of the loan by the debtor *had been established* and the debtor did not show the nature of the use of the money, while in the instant case, there had been no showing of any kind that Climate had any interest whatever in the subject property, that any of its assets ever went into the property, or that it had any relationship of any kind in regard to the property. In short, nothing was shown which might require Climate (or its trustees) to come forward to rebut.

It does not appear from the record that if any such alleged interest by Climate did exist, its corporate records, bank records, and income tax records were not available possibly to show such an interest or that discovery procedures could not have been used to establish, *prima facie,* some interest in the property if such, in fact, existed. However this may be, the record is devoid of any such showing; and the lower court was correct in denying relief and dismissing the proceeding against the appellees.

> *Order of March 30, 1971, affirmed, the appellant to pay the costs.*