## CLINTON PETROLEUM SERVICES, INC.
### *v.* NORRIS ET AL.

[No. 250, September Term, 1973.]

*Decided May 22, 1974.*

*Motion for reargument filed June 10, 1974; denied by per curiam filed on June 21, 1974.* (Per Curiam at p. 672 *infra.*)

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ.

*Joseph A. Mattingly* for appellant.

No brief filed on behalf of appellees.

SMITH, J., delivered the opinion of the Court.

In its continuing campaign to collect funds which it believes to be due it from appellees, Joseph J. Norris and Anna D. Norris, his wife, appellant, Clinton Petroleum Services, Inc. (Clinton), will be no more successful in its trip to this Court on this occasion than it was when it was here in the related matter of *Clinton Petroleum v. Norris*, 264 Md. 15, 284 A. 2d 413 (1971).

As will be gleaned from an examination of the earlier case, Clinton is strongly of the opinion that Mr. and Mrs. Norris are the actual owners of their former home which was purchased at foreclosure sale by Ronald V. Hoffmann and Doris N. Hoffmann, his wife. Mr. Hoffmann is a former employee of Climate Specialists, Inc. (Climate), a dissolved Maryland corporation of which Joseph J. Norris was president. Clinton recovered a judgment against Mr. and Mrs. Norris as trustees of that dissolved corporation. Clinton filed a petition for supplementary proceedings as permitted under Maryland Rule 628. It then followed with a request pursuant to the provisions of Rule 628 d for the appointment of a receiver for the former Norris home. We held "there had been no showing of any kind that Climate had any interest whatever in the subject property, that any of its assets ever went into the property, or that it had any relationship of any kind in regard to the property. In short, nothing was shown which might require Climate (or its trustees) to come forward to rebut."

Undaunted by this rebuff, Clinton moved yet again in that proceeding to examine Mr. and Mrs. Norris and Mr. and Mrs. Hoffmann. Supplementary proceedings must be brought in the proceeding in which the judgment is recovered.

Apparently heeding the comment of this Court in the earlier proceeding, that, "as the trial court pointed out, . . . there [was] no evidence in the case that Climate was ever in the title to the subject property or that any of its money or assets ever went into the property in any way," Clinton acquired the judgment of Fort Washington Lumber Co. against Mr. and Mrs. Norris and the judgment of Harvey E.

Pyles, Sr., against Mr. Norris in their individual names as differentiated from the earlier judgment against them as trustees. At the same time that it moved in the first case (Law No. 41,221) to examine Mr. and Mrs. Norris and Mr. and Mrs. Hoffmann, identical motions were filed in the latter two judgment cases, Law No. 34,065 and MJ 29-199, respectively. On September 5, 1973, the trial court (McCullough, J.) passed an order:

> "Petitions for Supplementary Proceedings granted in Law No. 34,065 and MJ 29-199. Petition denied as to Law No. 41,221, inasmuch as this issue has been previously finally litigated in *Clinton Petroleum v. Norris*, 264 Md. 15 (1971)."

On November 15, 1973, an order for appeal to this Court was entered by Clinton in Law No. 41,221. This date, obviously, was more than 30 days after the passage of the order from which the appeal was taken. Rule 812 requires that "[w]henever an appeal to this Court . . . is permitted by law, the order for appeal . . . shall be filed within thirty days from the date of the judgment appealed from . . . ." This provision is mandatory. Thus, we have no alternative but to dismiss the appeal pursuant to the provisions of Rule 835 a 2, b (3). *Buck v. Folkers*, 269 Md. 185, 188, 304 A. 2d 826 (1973), and *Hawkins v. GMAC*, 250 Md. 146, 148, 242 A. 2d 120 (1968).

Supplementary proceedings in the other two judgments came on for hearing before yet another judge (Meloy, J.). Mrs. Norris, her attorney, and counsel for Mr. and Mrs. Hoffmann were present. Apparently, the address of Mr. Norris was unknown at the time of the hearing. It was conceded by counsel for Clinton that Mr. and Mrs. Norris had been adjudicated bankrupts subsequent to the date of these judgments and that a discharge had been entered.

Judge Meloy questioned the present validity of the two judgments when he denied Clinton the right to proceed further by way of supplementary proceedings. Orders for appeal were seasonably filed in each case. Under § 17 of the Bankruptcy Act, 11 U.S.C. § 35, with certain specified

exceptions not shown to be here applicable, "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . ."

Clinton argues that the bankruptcy of Mr. and Mrs. Norris is not a bar to these supplementary proceedings and cites, in support of that contention, *Blick v. Nimmo,* 121 Md. 139, 88 A. 116 (1913). That case is not apposite.

In *Blick* our predecessors had before them a case in which a suit had been filed on behalf of Blick and other creditors of Nimmo, alleging that certain conveyances had been made "for the purpose of defrauding the plaintiff and his other creditors, and praying that said lots or parcels of land be declared to be the property of Sidney T. Nimmo and liable for the payment of his debts, etc." The defendants were summoned and an answer filed. Four years later, apparently prior to any further action in that proceeding, Mr. and Mrs. Nimmo filed a petition in the case alleging that Blick had filed a petition in the United States District Court for the District of Maryland in 1908, subsequent to the filing of the bill and answer, in which he prayed that Mr. Nimmo might be adjudged a bankrupt. The 1912 petition of the Nimmos further averred appointment of a trustee in bankruptcy, a report that there were no assets belonging to the estate, and that Mr. Nimmo had been finally discharged. The petition then sought a dismissal of the fraudulent conveyance proceeding. Blick countered by insisting that he was entitled to prosecute the suit in the Circuit Court for Baltimore County or to have it prosecuted by the trustee in bankruptcy in order that the property might be applied to the payment of his claim and the claims of other creditors of Mr. Nimmo. The trustee in bankruptcy was made a party defendant in the case with leave to answer. The trial court dismissed the suit on the ground of Nimmo's discharge in bankruptcy. Judge Thomas said for our predecessors:

"The contention of the appellee, and the theory upon which the order of the Court below appears to have been passed, is that the discharge of Sidney T. Nimmo amounted to an extinguishment of the plaintiff's claim. This is true to the extent that his

claim was released so far as the personal liability of Sidney T. Nimmo was concerned, but the discharge of a bankrupt does not affect the right of the trustee in bankruptcy or his creditors to have property previously disposed of by the bankrupt for the purpose of defrauding his creditors applied to the payment of his debts. This right of the trustee is expressly conferred by sections 67E and 70E of the Bankrupt Act of 1898. 1 *Remington on Bankruptcy*, secs. 1216 and 1217; *Collier on Bankruptcy* (9th Ed.) 362 and note 337. It is said in *Remington on Bankruptcy, supra,* where many cases are cited in the notes: 'Property fraudulently conveyed or held in secret trust for the debtor so far as the same would inure to the benefit of creditors without bankruptcy, is recoverable by the trustee in bankruptcy, and the transaction may be set aside,' and it is stated in the note in *Collier on Bankruptcy, supra;* 'The discharge of a debtor in bankruptcy is personal to the bankrupt and does not release his fraudulent grantees from liability for the fraud committed by them and in no way precludes the trustee from recovering property of the estate thus fraudulently transferred.'

"The object and purpose of this suit was not to obtain a decree against Sidney T. Nimmo for the amount of the plaintiff's claim, but to subject the property claimed by his wife and alleged to have been fraudulently conveyed to her to the payment of his debts, and his discharge in bankruptcy did not inure to her benefit or release the property from liability. *Moyer v. Dewey*, 103 U. S. 301; *Bush on Bankruptcy*, 155." *Id.* at 142.

It was pointed out that Blick was not a judgment creditor, that by the filing of the bill in the Circuit Court for Baltimore County he did not acquire a lien upon the property described in the bill in the sense of acquiring a preference, but only in the sense that anyone obtaining an interest in property from the defendants after the

defendants were summoned in the case would take it subject to the result of that suit. It was further observed that such a lien was not within the terms of § 67F of the Bankruptcy Act as it then stood nor did the "case fall within the ruling in *Pickens v. Roy*, [187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128 (1902)], requiring the suit to be instituted more than four months prior to the adjudication of bankruptcy, for it [did] not appear from the record in [the] case when the appellant was adjudged a bankrupt." The Court then said:

> "Section 70E of the Bankrupt Act of 1898, expressly authorizes the trustee in bankruptcy to proceed in the bankrupt Court or State Court to recover property fraudulently disposed of by the bankrupt, and there is no reason why he may not prosecute in a State Court a suit instituted by a creditor before the debtor is adjudged a bankrupt. If he neglects to do so a creditor may apply to the bankrupt Court to require him to prosecute the suit, or upon his refusal to do so, the creditor may, after making him a party, proceed with the suit to a final decree. This seems to come within the principle recognized in *Eyster v. Gaff*, [91 U. S. 521, 23 L. Ed. 403 (1876)]; *Pickens v. Roy, supra; Remington on Bankruptcy*, sec. 1644; *Haugh v. Maulsby*, 68 Md. 423; *Griffin v. Mutual Life Ins. Co.*, 119 Ga. 664; *Davis v. Vandiver & Co.*, 143 Ala. 202.

> "There has been no action of the bankrupt Court to stay the proceedings in the State Court, even assuming that this record presents a case for the proper exercise of that power, and we do not think that the mere suggestion by the bankrupt that a petition was filed in the District Court to have him adjudged a bankrupt and that he was finally discharged by that Court, sufficient to stay the proceedings in the Circuit Court for Baltimore County, or to divest that Court of its jurisdiction.

> "For these reasons we think the Court below was wrong in dismissing the bill, the only effect of which bill, in case of a decree in favor of the

plaintiff, would be to recover property for the benefit of the bankrupt estate." *Id.* at 146.

This case does not arise under the Uniform Fraudulent Conveyance Act (Maryland Code (1957) Art. 39B), which replaced in virtually identical terms the statute of 13 Elizabeth, Chapter 5, in force at the time of *Blick. See Beccio v. Tawnmoore Apartments,* 265 Md. 297, 299, 289 A. 2d 311 (1972), and cases there cited. It arises under Rule 628, upon a petition brought in the proceeding in which the judgment was recovered. That rule is intended to provide aid to a judgment creditor in collecting a judgment by permitting a searching examination as to the assets of the debtor. In other words, it provides, in aid of execution, for what was labeled in the trial court as a "fishing expedition." It replaces what formerly was Code (1951) Art. 75, §§ 148-153. That Code provision came into Maryland procedure with the enactment of Chapter 558 of the Acts of 1890. In 2 J. Poe, *Pleading and Practice* § 707B (5th ed. H. Tiffany 1925), it is stated:

> "The general object of the legislation is to enable the creditor to require the debtor to submit to an examination in regard to his financial condition and ownership of property. The proceeding is modelled on the New York law, and no doubt the decisions of the New York courts would be regarded as satisfactory precedents in any cases arising in our practice under any of the sections of the statute."
> *Id.* at 659.

Rule 628 a 1 provides that supplementary proceedings may be brought "[a]t any time within which an attachment or execution might issue upon judgment . . . ." D. Joseph & E. Ottenheimer, *Supplementary Proceedings in Maryland* (1955) states:

> "An order for examination will be set aside on motion . . . where the debt has been discharged in bankruptcy . . . ." *Id.* at 20.

> "A discharged bankrupt is not amenable to Supplementary Proceedings on a judgment that has

been discharged by the bankruptcy court since such a judgment is not subject to attachment or execution which is an express prerequisite to the bringing of the Proceedings in Maryland, Article 75, Section 148, of the Code as amended." *Id.* at 42.

Similar comment has been made in other works. *See, e.g.,* 33 C.J.S. *Executions* § 348 at 652, § 357 at 660, § 360 at 663, and § 368 at 681 (1942), and 9 Am. Jur. 2d *Bankruptcy* § 753 (1963). Holdings to that effect are to be found in *Goldman v. Adlman,* 291 Mass. 492, 197 N. E. 632 (1935); *Gibson v. Gorman,* 44 N.J.L. 325 (Sup. Ct. 1882); *Leo v. Joseph,* 56 Hun. 644, 9 N.Y.S. 612 (Sup. Ct. 1890); and *World Co. v. Brooks,* 7 Abb. Pr. (n.s.) 212 (C.P. N.Y. 1869). There have been similar holdings arising under state insolvency laws. *Robens v. Sweet,* 48 Hun. 436, 1 N.Y.S. 839 (Sup. Ct. 1888); *Coursen v. Dearborn,* 30 N.Y. Super. 143 (1867); *Smith v. Paul,* 20 How. Pr. 97 (Sup. Ct. N.Y. 1860); and *Dresser v. Shufeldt,* 7 How. Pr. 85 (Sup. Ct. N.Y. 1852). Our rule today reads almost exactly as the statute read when Mr. Poe wrote almost 50 years ago. Clinton could not issue execution on these judgments. Therefore, it may not examine the debtors or other persons in supplementary proceedings in aid of collection of those judgments by way of execution or attachment. Accordingly, the trial judge did not err.

> *Appeal from Law No. 41,221 dismissed; orders in appeals from Law No. 34,065 and MJ 29-199 affirmed; appellant to pay the costs.*

## ON MOTION FOR REARGUMENT

PER CURIAM:

Appellant has moved for reargument. It urges that since Maryland Code (1957) Art. 39B (the Uniform Fraudulent Conveyance Act) § 9 (1) (b) permits a creditor to "[d]isregard [a fraudulent] conveyance and attach or levy execution upon the property conveyed," we

have erred. That section presupposes a valid judgment, one not paid and not discharged in bankruptcy. *Blick v. Nimmo*, 121 Md. 139, 88 A. 116 (1913), to which appellant alludes and which we discussed fully in our opinion, does not support the position of appellant. The judgments of appellant stand discharged under the Bankruptcy Act unless and until appellant proves a fraudulent conveyance. Supplementary proceedings are intended to be used only in the case of a judgment in good standing.

If appellant sees fit to proceed under Art. 39B to have the conveyance set aside, it will have the same discovery rights under the rules as any other party plaintiff. However, appellant will wish to be certain before instituting such action that it has "substantial justification" for the action in order that it may not be ensnared in Maryland Rule 604 b, as were the plaintiffs in *Suitland Dev. v. Merchants Mort.*, 254 Md. 43, 254 A. 2d 359 (1969), and thus become responsible for "the reasonable expenses incurred by the adverse party in opposing such proceeding . . . . "

*Motion denied.*