216

35 A.3d 443

**Deane J. ALLEN, et al.**

v.

**Sharon J. RITTER, Successor Personal Representative of the Estate of Roy Harry Allen.**

**No. 16, Sept. Term, 2011.**

Court of Appeals of Maryland.

Dec. 15, 2011.

Reconsideration Denied Feb. 16, 2012.

Elise Davis, Easton, MD, for petitioners.

Frederick R. Franke, Jr., Annapolis, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ADKINS, J.

The dispute over the estate of Roy H. Allen has been drawn-out and contentious. Allen died in 2005; after much legal maneuvering, and scores of docket entries, the Orphans' Court for Dorchester County finally approved an account of his estate in 2009. Before personal representative Sharon J. Ritter ("Appellee") would make the distribution under that account, she required that Roy Allen's children sign a document releasing her from liability related to her duties as personal representative. Roy Allen's daughter, Virginia Leitch, signed and returned the document, but his sons, Deane J. Allen and Robert L. Allen ("Appellants"), refused. The orphans' court then ordered Appellants to sign, but they again refused. They appealed to the Court of Special Appeals, which affirmed the order of the orphans' court. *Allen v. Ritter*, 196 Md.App. 617, 632, 10 A.3d 1183, 1191–92 (2010). We granted *certiorari. Allen v. Ritter*, 419 Md. 646, 20 A.3d 115 (2011).

Considering the years of legal wrangling among the parties, we are asked to decide a relatively narrow issue. Appellants presented the following questions for our review, which we have summarized and restated:

1. Does Estates & Trusts Section 9–111 allow a personal representative to obtain a release when he or she is acting pursuant to a court-approved distribution?

2. Does an orphans' court have the authority to order legatees to sign releases when requested by a personal representative under Section 9–111?[1]

We shall hold that Section 9–111 entitles a personal representative to obtain a release when she requests one, and that an orphans' court may order heirs and legatees to sign such releases when requested. We shall affirm the Court of Special Appeals' judgment.

## STATEMENT OF FACTS

Roy H. Allen died January 28, 2005, survived by three children, Virginia Leitch, Deane J. Allen, and Robert L. Allen. Since Roy Allen's death, the personal representative of his estate has shifted. First, Leitch was named personal representative in Roy Allen's will. Then, Leitch and Robert Allen were named co-personal representatives by the Orphans' Court for Dorchester County ("orphans' court"). After ongoing estate disputes, the orphans' court removed Leitch and Robert Allen and named Sharon J. Ritter as personal representative on February 26, 2008.

Appellants continued to quarrel over Roy Allen's estate. The record reflects numerous actions by Appellants objecting to Appellee's handling of the estate. In an attempt to close

---

1. The questions, as presented by Appellants, are as follows:

1. Does Estates & Trusts Section 9–111 entitle a Personal Representative to demand and receive a sweeping release from the Appellants before she pays over to them sums of money the Court had determined they were entitled to when it approved the First And Final Administration Account?

2. Did the Orphans' Court for Dorchester County, Maryland have the authority to order the Appellants to sign a sweeping release of liability to the Successor Personal Representative before they could secure payment of their respective shares of their father's estate that had been directed by the Orphans' Court when it approved the Successor Personal Representative's First And Final Administration Account?

the matter, Appellee filed a First and Final Administration Account ("Account") of Roy Allen's estate on September 17, 2008, in the orphans' court. Appellants excepted to portions of this Account, including attorney's fees to be paid to Appellee and health-care reimbursement costs borne by Leitch. Despite these exceptions, the orphans' court approved the Account on May 5, 2009, as filed by Appellee.

In a June 10 letter that year, Appellee mailed a request to Appellants that they sign a release before Appellee would distribute money to them. The release read:

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, Robert Allen, hereby acknowledges to have received from Sharon J. Ritter, Personal Representative of the Estate of Roy Harry Allen, deceased, being in full satisfaction of the distribution to the undersigned, as follows:

Cash:    $71,273.76

and in consideration thereof the undersigned does hereby release, acquit, exonerate and discharge the said Sharon J. Ritter, Personal Representative, as aforesaid, her heirs, executors and administrators of and from all and every action, suit, claim or demand which could or might possibly be brought, exhibited or prosecuted against her, for or on account of her duties as Personal Representative of said estate, arising from or in any way related to the administration thereof, and on account of such distribution, or any part thereof, hereby declaring myself fully satisfied, contented, and paid, as above specified. I do hereby verify and affirm under the penalties of perjury that I executed the foregoing Release for the purposes therein contained.[2]

Appellants did not sign the releases. Responding to the June 10 letter, Appellants' attorney inquired what law required his clients to sign the releases. Appellants' attorney

---

2. The releases sent to Deane Allen and Virginia Leitch were identical, except for the name of "the undersigned" and the amount listed for satisfaction of the distribution.

was concerned that Appellants could face a lawsuit from Leitch on a related matter, and stated that they were "not going to foreclose any recourse they may have against anyone else in this matter."

In an attempt to assuage Appellants' concerns about a potential lawsuit, Leitch's attorney sent a letter to Appellants on July 21, 2009, stating that Leitch did not intend to pursue legal action against Appellants. He also observed that Leitch was barred from raising such claims and that "the appeal time [had] elapsed." Regardless, Appellants still did not sign the releases.

Appellee then filed a petition for release, asking the orphans' court to

enter an Order requiring [Appellants] to show cause why they should not be ordered to sign the Releases prior to distribution of estate funds from the Personal Representative and further, Order that all Orders issued by this Court pertaining to all matters raised during the administration of this estate are binding and further, since the time for appeals has passed, that such Orders have been issued with prejudice.

To support this petition, Appellee cited Section 9–111 of Maryland's Estates & Trusts Article. The petition said this section "states that a personal representative may obtain a release from an heir or legatee." The full language of that section reads: "Upon making a distribution, a personal representative may, but is not required to, obtain a verified release from the heir or legatee." Md.Code (1974, 2011 Repl.Vol.), § 9–111 of the Estates & Trusts Article. Appellee reiterated her desire to "exercise this right" and that she would "not distribute without a Release signed by" Appellants.

On September 29, 2009, the orphans' court ordered Appellants to show cause why they had not given Appellee a "Receipt and Release regarding [their] distribution" under Roy Allen's will. In their October 20, 2009, response to the court's order, Appellants argued that Appellee was not entitled to a release. They said the language in the release "far

exceeds the scope of having made a distribution" of the residuary estate. They argued that because the distribution was court-ordered, there was "nothing to protect" Appellee. And they concluded by arguing that Section 9–111 applies only to "tangible property and not a cash distribution of a residuary estate," and accordingly, that "Section 9–111 is not applicable to this case."

Appellee answered a week later, disputing Appellants' interpretation of the law. Appellee stated that "Section 9–111 is a stand-alone provision allowing for the personal representative to obtain a release" and disputed the assertion that Section 9–111 applies only to tangible property. Appellee further asked the orphans' court to order Appellants to sign the releases.

After a further answer by Appellants, the orphans' court ordered Appellants on November 10, 2009, to sign the releases and return them to Appellee within two weeks. Appellants filed a timely appeal to the Court of Special Appeals.

The Court of Special Appeals affirmed:

Pursuant to § 9–111, a personal representative "may ... obtain" a release from an heir or legatee. We hold that this language provides a personal representative with the right to require a release from a distributee. As such, [Appellee] had the right to require a release from the [Appellants] prior to making a distribution pursuant to the Final Account.

*Allen,* 196 Md.App. at 632, 10 A.3d at 1191. The Court of Special Appeals also held that the orphans' court had the power to order Appellants to sign the releases, as such power was "incident to the exercise of its powers to administer estates." *Id.* at 633, 10 A.3d at 1192. The court denied Appellants' motion for reconsideration on February 4, 2011, and we granted *certiorari* on May 20, 2011. *Allen,* 419 Md. at 646, 20 A.3d at 115.

## DISCUSSION.

Pursuant to the questions presented by Appellants, we must interpret the meaning of Section 9–111 of the Estates &

Trusts Article, which reads: "Upon making a distribution, a personal representative may, but is not required to, obtain a verified release from the heir or legatee."

To construe the statute, we apply principles of statutory interpretation, as we have recently described:

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. When a statute's plain language is unambiguous, we need only to apply the statute as written, and our efforts to ascertain the legislature's intent end there.

*Carven v. State Ret. & Pension Sys.*, 416 Md. 389, 407–08, 7 A.3d 38, 49 (2010) (citations omitted) (quoting *Crofton Convalescent Ctr., Inc. v. Dep't of Health & Mental Hygiene*, 413 Md. 201, 216, 991 A.2d 1257, 1266 (2010)).

### 1. Statutory Scope

This statute was enacted in 1969 as part of a comprehensive reform of Maryland testamentary law. The language of Section 9–111 comes directly from the Second Report of the Governor's Commission to Review and Revise the Testamentary Laws of Maryland, which was appointed in 1965 to help the state in "recodifying and revising the Maryland laws concerning testamentary matters[.]" William L. Henderson et al., *Second Report of Governor's Commission to Review and Revise the Testamentary Laws of Maryland, Article 93: Decedents' Estates* i, 144–45 (1968) (*"Henderson Commission Report "*). The comments to the Commission's report suggest that Section 9–111 was designed to continue the "Maryland practice of not requiring releases, although personal representatives, out of caution, have, in the past, obtained releases in many instances." *Henderson Commission Report* at 144. Additionally, the comments indicate:

The Commission does not, however, intend to imply . . . that an heir or legatee does not have the right to petition a

Court to compel the personal representative to make a distribution, if the personal representative is abusing his discretion in withholding any distribution.

*Henderson Commission Report* at 145. Appellants make several arguments for why the language of Section 9–111 does not require them to sign the releases sent to them by Appellee.

■ At oral argument, Appellants argued that a "release" under Section 9–111 does not extend to "release from liability," asserting instead that personal representatives are only entitled to something more akin to a "receipt." We do not agree. If the Legislature had intended for Section 9–111 to allow only for a "receipt," then that word would have appeared in the statute. Instead, the plain meaning of the word "release" [3] unambiguously indicates that a release of liability is intended. Furthermore, a leading treatise on Maryland estate and trust law contains sample release forms that use language similar to the releases in this case. *See* Allan J. Gibber, *Gibber on Estate Administration* 10–114 (5th ed.2011) (sample form containing this language: "I do hereby Release, Acquit, Exonerate and Discharge ... Personal Representative of and from all and every action, suit or demand which could or might possibly be brought, exhibited or prosecuted[.]").[4]

■ Appellants argue that the discretionary nature of the statute and the Henderson Commission comments preclude a personal representative from obtaining a release in this case. They argue, in effect, that an heir may refuse to sign a release because the statute only says that a personal representative "may, *but is not required to* " obtain a release before distribution. None of the legislative history or case law indicates that

---

**3.** The definition of "release" includes "the act of giving up a right or claim to the person against whom it could have been enforced." *See Black's Law Dictionary* 1403 (9th ed.2009); *see, e.g., Comptroller of the Treasury v. Citicorp Int'l Commc'ns, Inc.*, 389 Md. 156, 171, 884 A.2d 112, 121 (2005).

**4.** As we shall discuss below, the permissible scope of such a release is limited.

an heir or legatee may refuse to sign a release before distribution when presented with one. Although the comments to the Henderson Commission Report indicate that Section 9–111 continued the "Maryland practice of not requiring releases," *Henderson Commission Report* at 144, it is clear to us that this practice simply means that a release is not necessary for distribution to proceed in all cases. Section 9–111 says that a personal representative "may" obtain a release. We therefore agree with the Court of Special Appeals in that "we construe the plain language of the statute involved here, providing that the personal representative 'may ... obtain' a release, as conferring the **right** to obtain a release prior to distribution." *Allen v. Ritter,* 196 Md.App. at 628, 10 A.3d at 1189.

Moving away from plain language, Appellants argue that Section 9–111 does not apply when the corresponding distribution is made according to a court order. Appellants assert: "No where in the language of the statute is it even intimated that the personal representative has the right to demand and obtain any release prior to paying over to the distributees the amount approved by the Orphans' Court when it approved the [Account]."

Appellants contend that the functional need for a release, when a personal representative is acting under a court-ordered distribution, is obviated by the language of Section 9–112(e), which reads: "Distribution by the personal representative in accordance with the direction of the court at the meeting protects and indemnifies the personal representative acting in obedience to it." § 9–112(e) of the Estates & Trusts Article. Appellants continue:

If a personal representative making a distribution pursuant to a court order in accordance with a 9–112 situation is protected, because that is clearly not a final account situation, then why isn't a personal representative making a distribution in accordance with a final account approved by an orphans' court not also protected from further litigation? Appellants aver that a personal representative is so protected and the case law supports that view.

■ Appellants *proceed to cite* numerous Maryland cases for the principle that a personal representative distributing an estate under a court order is protected from lawsuits from heirs or legatees. Appellants imply that the case law makes a release unnecessary in such a situation. It is true, as Appellants state, that "once a will has been construed by an equity court, a personal representative is bound to make distribution in accordance with that court's order, since the personal representative is fully protected by it[.]" *Webster v. Larmore,* 270 Md. 351, 354, 311 A.2d 405, 406 (1973) (citations omitted). This court has applied "the same rationale . . . to the order of an orphans' court directing distribution[.]" *Id.*

■ Nevertheless, we agree with the Court of Special Appeals that Section 9–112 is inapplicable here.[5] Because the specific procedures prescribed by that section were not followed here, that section simply does not apply to Roy Allen's estate. Furthermore, we agree with the Court of Special Appeals that adopting Appellants' view of Section 9–112 would serve to strip Section 9–111 of certain meaning. Such a view would effectively prevent a personal representative from obtaining a release, despite what Section 9–111 says. As the Court of Special Appeals observed,

> even if § 9–112 were applicable and protected the representative from a claim regarding the final distribution, nothing in that statutory provision suggests that it nullifies the right of the personal representative to obtain a release prior to

---

5. The Court of Special Appeals distinguished Section 9–112:

> The statute makes clear that, when the *specific procedure set forth in the statute* is followed, the personal representative is protected in making the ordered distribution. This protection, however, is limited to proceedings taken pursuant to the statute.
>
>       \*      \*      \*
>
> In this case, the record does not reflect any proceedings pursuant to § 9–112. Indeed, at oral argument, [Appellants] conceded that there was no distribution pursuant to § 9–112 here. Rather, in accordance with E.T. §§ 7–302 and 7–303, [Appellee] filed, and the Orphans' Court approved, a Final Account of the Estate. (Citations omitted.)

*Allen v. Ritter,* 196 Md.App. 617, 631, 10 A.3d 1183, 1191 (2010) (emphasis added) (citations omitted).

distribution. To read the statutes in this manner would render § 9–111 superfluous. *See Pete v. State,* 384 Md. 47, 65–66, 862 A.2d 419 (2004) (statutes addressing the same subject should be read together and harmonized to avoid rendering " 'any portion, meaningless, surplusage, superfluous, or nugatory' ") (quoting *Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 303, 783 A.2d 667 (2001)). *Allen v. Ritter,* 196 Md.App. at 631 n. 11, 10 A.3d at 1191; *see also Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007, 1011 (1977) ("Where two statutes deal with the same subject matter as here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each."). A personal representative is indeed "protected" when acting in a Section 9–112 proceeding, but this protection does not negate the personal representative's ability to obtain a release from the legatees if he or she so desires. This reading is consistent with our principles that the statutory sections should be "harmonized" and that "full effect should be given to each."

Appellants attempt to turn this principle of statutory construction in their favor by asserting that a full and toothy enforcement of Section 9–111 would "negate[ ] the liability of a personal representative under" Sections 6–303 [6] and 10–103.[7]

---

**6.** Section 6–303 of the Estates & Trusts Article reads, in relevant part:

> (b) *Liability*—Termination does not discharge a personal representative from liability for transactions or omissions occurring before termination, or relieve him of the duty to protect property subject to his control, and to account for and deliver the property to his successor. Termination does not affect the personal jurisdiction to which he has given consent pursuant to § 6–101 of this title in proceedings which may be commenced against him arising out of the performance of his duties as personal representative.

**7.** Section 10–103 of the Estates & Trusts Article reads in full:

> (a) *Proceedings against personal representative.*—(1) If no action or proceeding involving the personal representative is pending one year after the close of the estate pursuant to § 5–709 of this article or § 10–101 of this subtitle, the personal representative shall be discharged from any claim or demand of any interested person.

We are again unpersuaded. A release is specifically designed to shield a personal representative, who asks for one, from the background liabilities spelled out in those sections. If we were to hold that Appellee could not obtain a release here, we would strip Section 9–111 of meaning. As Appellee correctly stated in oral argument, Section 9–111 says that a personal representative "may obtain" a release, not that he or she "may ask for" one.

There is an important practical reason, moreover, for a personal representative to obtain a release before the final distribution is made. Without a release, heirs could sue the personal representative for alleged malfeasance, improper distribution, or other claims, and with all estate assets distributed, the personal representative would have no assets with which to fund a defense, or if appropriate, settle or satisfy the claim. Although in some instances, the personal representative might be liable for such expenses out of personal funds, in other—likely more frequent—instances, the estate should pay for the defense and satisfaction of the claim. If we were to say that a personal representative could not obtain a release before the statute of limitations, in Section 10–103, runs, then Section 9–111 would not offer any additional protection beyond the statute of limitations. "Full effect" can be given to each of these three sections and still enable a personal representative to obtain a release.

We are mindful of the implications of Appellants' argument regarding the scope of releases. In their questions presented, Appellants are seemingly concerned with "sweeping" releases, and in their brief they mention "a release which far exceeds mere acknowledgment of a receipt of the distribution to which the legatee has been determined to be entitled to by an Orphans' Court[.]" Section 9–111 extends to more than a mere "receipt," but we recognize that the releases in that section are not limitless in scope.

---

(2) The rights so barred do not include rights to recover from a personal representative for fraud, material mistake, or substantial irregularity.

Although the language of Section 9–111 is bare on the scope of a valid release, as is the Henderson Commission Report, Section 10–103 prevents the statute of limitations from running on claims against personal representatives in cases of fraud, material mistake, or substantial irregularity. Reading these sections together suggests that the Legislature did not intend to give the personal representative a right to a release under Section 9–111 that would negate the extended opportunity for a beneficiary to claim fraud, material mistake, or substantial irregularity.

Looking further, this Court has consistently held that fraud can and will invalidate an otherwise-complete release of liability. *See, e.g., Gingell v. Backus,* 246 Md. 83, 90, 227 A.2d 349, 352 (1967) ("Whether the release is rescinded by a court of equity for fraud or fraud is pleaded to bar its legal effect as satisfaction of the plaintiff's claim in a court of law, the result is the same. In either situation the release is vitiated and consequently cannot defeat a recovery in a subsequent or contemporaneous law action."); *Parish v. Md. & Va. Milk Producers Ass'n, Inc.,* 261 Md. 618, 690–91, 277 A.2d 19, 53 (1971) ("A release, however, is a contract and may be set aside for the same reasons for which any other contract may be avoided. If the release is obtained by fraud, it may be set aside for this reason." (citations omitted)); *Clinton Petroleum Servs., Inc. v. Norris,* 271 Md. 665, 669, 319 A.2d 304, 306 (1974) ("The discharge of a debtor in bankruptcy is personal to the bankrupt and does not release his fraudulent grantees from liability for the fraud committed by them and in no way precludes the trustee from recovering property of the estate thus fraudulently transferred." (citations omitted)); *Bernstein v. Kapneck,* 290 Md. 452, 460, 430 A.2d 602, 606–07 (1981) (observing that fraud is grounds for admitting parol evidence to contradict a release).

■ Although we do not attempt to decipher the exact contours of releases under Section 9–111, we read such releases, consistent with the common law rule and with Section 10–103, as stopping short of acts of fraud, material mistake, or

irregularity on the part of the personal representative. Accordingly, we hold that the scope of a release pursuant to Section 9–111 does not and cannot release a personal representative from claims that might arise from fraud, material mistake, or substantial irregularity on the part of the personal representative.

## 2. Power of Orphans' Court

■ Appellants also challenge the ability of the orphans' court to mandate their signatures on the releases before distribution. The Estates and Trusts Article spells out the jurisdiction of the orphans' court:

(a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

§ 2–102(a) of the Estates & Trusts Article. This Court has also construed the orphans' courts' powers to include "jurisdiction over interested persons and creditors, who invoke the court's power to determine issues within its express powers." *Kaouris v. Kaouris,* 324 Md. 687, 709, 598 A.2d 1193, 1204 (1991).

Thus the orphans' courts are empowered to decide such matters as are necessarily incident to the exercise of the powers expressly granted them. We have stated that the legislative intention was to confer adequate power and jurisdiction upon [o]rphans' [c]ourts in every case in which their general powers would enable them to act. (Citations omitted.)

*Radcliff v. Vance,* 360 Md. 277, 286–87, 757 A.2d 812, 817 (2000); *see also* Henderson Commission Report, 15–16 ("The Commission felt that the general statement of power [now codified in Section 2–102] is sufficiently broad so that it is not necessary to itemize separate powers[.]").

We agree with the Court of Special Appeals that the order here by the orphans' court directing Appellants

to sign the requested releases prior to receipt of their distributive shares of the Estate was incident to the administration of the Estate. The court had approved the [Account] presented by [Appellee], and the only thing impeding the distribution of the [Appellant's] shares of the Estate was their refusal to sign the release, which, as indicated, [Appellee] had the right to obtain pursuant to § 9–111. Without a court order, the final distribution of the estate remained unsettled.

*Allen v. Ritter,* 196 Md.App. at 633, 10 A.3d at 1192.

Appellants argue that the releases do not fall within the powers of the orphans' court by citing *Crandall v. Crandall,* 218 Md. 598, 601–02, 147 A.2d 754, 756 (1959), which held that the "Orphans' Court was without jurisdiction to pass upon the validity of the release[.]" *Crandall,* however, is inapplicable, as here the orphans' court did not pass on the validity of the releases; that court merely ordered them signed, incident to its administration of Roy Allen's estate.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Special Appeals. Section 9–111 allows a personal representative to obtain a release from legatees even when acting pursuant to the distribution order of an orphans' court, and such a court may order those legatees to sign the release when the personal representative so requests.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**