PHILIP D. GRADMAN, Guardian, et al. *v.* DIANA
GRADMAN, Executrix

[No. 10, October Term, 1943.]

*Decided November 10, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Theodore F. Brown,* with whom were *Brown & Shipley* on the brief, for the appellant.

*F. Neal Parke,* with whom was *Robert L. Mainen* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Isadore J. Gradman immigrated to this country from Lithuania in October, 1921. After he arrived here his wife, who remained in Lithuania, bore him a son, whose name is Morris Gradman. In 1933 he divorced his wife, the decree evidently having been signed by a judge of the Circuit Court for Carroll County. His brother,

Philip D. Gradman, immigrated to this country before Isadore, and in 1923 these brothers entered into a partnership for the purpose of canning vegetables. Their place of business was located at Melrose, Carroll County, Maryland, and they traded under the name of "Melrose Canning Company." This partnership continued and the business prospered until the death of Isadore on October 3, 1940. He evidently thought he was possessed of considerable property, exclusive of his interest in the partnership. Certain funds and personal property he treated as his individual property and plainly attempted to dispose of by will.

He executed his will on the 6th day of May, 1937, in which he named his second wife, Diana Gradman, executrix. It was admitted to probate in the Orphans' Court of Carroll County on December 10, 1940. Under the first item of the will he gave to his wife his entire interest in the partnership property, both real and personal. In the second item he gave to his wife "all household goods and other personal property, exclusive of cash and securities." By the third item of the will he directed that: "All my property not hereinbefore specifically devised or bequeathed, shall be sold and converted into cash by my Executrix" and "the proceeds therefrom, together with all cash in bank, or elsewhere, belonging to me at the time of my death, shall constitute the residue or balance of my estate for distribution"; and, after directing that all debts, funeral expenses and taxes of every kind, and costs of administration be paid out of this residue, he bequeathed the balance remaining as follows:

"Twelve and one-half per centum of said balance to my son, Morris Gradman, now residing in Lithuania.

"Five per centum of said balance to my sister, Lena Friedman, now residing in Lithuania.

"Five per centum of said balance to my sister, Ynty Gradman, now residing in Lithuania.

"Two and one-half per centum of said balance to Associated Jewish Charities, of Baltimore, Maryland.

"The balance of said fund then remaining shall be divided equally among my said wife, Diana Gradman, and the children born to her as a result of our marriage, share and share alike."

There is a provision in the will which is to apply in the event of the death of either of his sisters, which does not affect this case.

Diana Gradman did not desire to continue in the canning business and on the 3rd day of March, 1941, entered into a written agreement with her brother-in-law, Philip D. Gradman, the surviving partner, for the sale to him of all her interest in the partnership acquired under item one of her husband's will. In this agreement there is no mention of any savings accounts standing in the name of Isadore J. Gradman or Philip D. Gradman, nor is there any mention of any stock in the Columbia County Canning Company. This agreement was reported by the executrix to the Orphans' Court and an order was passed directing her to transfer to Philip D. Gradman the partnership property in conformity with the agreement.

During the life of Isadore J. Gradman the partnership did banking with two institutions located at Hanover, Pennsylvania; one, The People's Bank of Hanover, the other, The Hanover Trust Company. In each of these banks the partnership was extended a line of credit—$15,000 by the former and $5,000 by the latter—and annually a statement of assets and liabilities was submitted by it to each bank. It did business with the Hanover Trust Company from the time of its formation. Mr. Hoffacker, the president of the trust company, seems to have advised them concerning their financial affairs. He states: "I worked it out a good many years ago and the policy of the Company was to withdraw a reasonable amount of earnings each year that in the event they would have a year in which they would have a lot of difficulty to get credit that this partnership, through their individual money, would have sufficient money to furnish them with capital to operate,

and they built up an individual cash reserve in order to do that." On October 19, 1929, each partner opened a savings account in this bank. Isadore J. Gradman's account was in his individual name. Philip D. Gradman's account was opened in the name of "P. D. Gradman and/or his wife, Celia Gradman." The deposits in each of these accounts were identical, except that on October 30, 1929, Isadore deposited $500 and Philip did not make a deposit at that time. But aside from that "the other deposits are identical" and "were identical until the time of his death."

On October 14, 1933, these brothers and partners opened savings accounts in the Peoples Bank. Isadore J. Gradman opened an account in his individual name and Philip D. Gradman opened an account in the name of "P. D. Gradman and/or Celia Gradman, his wife, or the survivor."

In some cases they deposited checks from the Melrose Canning Company. The amount of a check so deposited was divided between the two accounts, but Isadore had about $3,000 more in his account than Philip had in his. These savings accounts in these banks grew, and when the line of credit of the partnership was exceeded and more credit was desired the bank would discount a note payable to it and signed by the Melrose Canning Company and Philip and Isadore Gradman.

The Hanover Trust Company first took what they called withdrawal slips which authorized it to withdraw from each savings account one-half of the amount of the loan, and these slips were pinned to the note. When the loan was made, the total amount of the savings account exceeded the amount of the loan. Later on the bank took an assignment of each account equal to one-half of the amount loaned. The effect of this was to put up the savings accounts as collateral for the payment of loans made by the bank to the partnership.

About the same procedure was followed when the Peoples Bank of Hanover loaned money to the partnership. A paper was signed authorizing the bank to with-

draw one-half of the amount loaned from each savings account.

The partnership carried only checking accounts in these banks and when notes due the respective banks fell due they were paid by the partnership.

Under the agreement of March 3, 1941, Philip D. Gradman covenanted to pay all partnership debts. At that time two notes were held by the Hanover Trust Company, one for $15,000, which has been paid by Philip, and another for $11,900 which has not been paid, but Philip Gradman has asked the bank to carry it and has assumed responsibility for its payment.

These savings accounts were treated both by the banks and by Philip and Isadore Gradman as their individual property and separate and distinct from partnership funds. Each drew against these savings accounts from time to time. On January 6, 1937, Isadore withdrew from the Hanover Trust Company, from his savings account, $3,096.44 and on March 11, the same year, he withdrew from the same account $2,000. These sums were deposited to his checking account and the money was used for the erection of a house in Hanover, Pennsylvania. The title to the property thus improved was in the name of Isadore J. Gradman and Diana Gradman, his wife, and upon his death passed to his widow, who has since sold it.

The difficulty in this case arises from the fact that the total amount of these savings accounts, namely, $56,-264.72, was carried on the financial statements to the banks and on a statement made to Dun and Bradstreet, Inc., as a capital asset of the partnership, and it is urged by appellee that the total amount of these accounts was partnership assets and passed to the widow under the first item of Isadore J. Gradman's will. The record discloses no evidence that the partnership at the time of the death of Isadore J. Gradman was not solvent and able to pay its debts, but on the contrary it would seem that the partnership was perfectly able to pay its outstanding obligations at that time.

So that in dealing with this matter we are not confronted with any rights of creditors but only with the rights of the devisees named in the residuary clause of the testator's will. In determining their respective rights we are to be guided by the intention of the testator. That the intention of a testator as disclosed by his will should control courts, as stated by Judge Marbury in the case of *Childs' Estate v. Hoagland,* 181 Md. 580, 30 A. 2d 766, 769, has been said so often that it has become a truism. In determining what the testator's intention was the following facts are significant: By the second item of the will he gave his wife all household goods and personal property, exclusive of cash and securities in bank. The fact that if the amount of money on deposit in the name of the testator in these savings accounts is not to be considered his personal property, he would have left little or no estate exclusive of his interest in the partnership; and if the testator intended the money in the savings accounts to go to his wife at his death it would have been perfectly easy for him to have opened these accounts in the names of himself and wife, the balance at the death of either to go to the survivor. When we consider, in connection with these facts, that the savings accounts were in his name solely and drawn and used by him at will, we are of the opinion that the testator did not intend that the balance on deposit in these savings accounts in his name should pass to his wife under the first item of his will. This conclusion is strengthened when it appears that under the agreement of March 3, 1941, whereby Diana Gradman sold all of her interest in the partnership to Philip D. Gradman, nowhere in that agreement is reference made to these savings accounts. Without going into the matter in detail, we are of the opinion that the stock held by the testator in the Columbia County Canning Company was his individual property and not partnership property and did not pass to the widow under the first item of the testator's will. It was purchased with money derived from his share of

partnership profits. These items then, to wit, the balance standing in the savings accounts in these banks in the name of Isadore J. Gradman at the time of his death, and the stock in the Columbia County Canning Company, did not pass under the will to the widow, but pass under the third item of the will and constitute a part of the residuary and should be distributed as directed by the testator to the individuals in the proportion named in that item of the will.

When the testator's estate was ready for an account and distribution, the executrix filed a petition in the court asking that distribution of the estate be made under Section 151 of Article 93 of Flack's Annotated Code of Maryland, 1939, and that a day be named by the court for distribution. Accordingly an order of court was passed naming August 25, 1941, as the day for distribution to be made under the jurisdiction of the court. A notice of publication ran in a paper published in Carroll County for the requisite time. The Register of Wills for Carroll County sent notices to Lena Friedman, Ynty Gradman and Morris Gradman that August 25, 1941, was named as the date for distribution. Replies were received from the women, but the notice addressed to the last mentioned was returned.

In December, 1940, the Orphans' Court of Carroll County appointed Philip D. Gradman guardian of Morris Gradman, born January 12, 1922, a resident of Erzvilkas, Lithuania, and required a bond of $4,500. This order was filed December 2, 1940. Philip D. Gradman filed a bond and entered upon his duties as guardian. He had no knowledge of the action of the Orphans' Court in this estate until after its order of the 25th day of August, 1941, was passed. That order is as follows: "The aforegoing first and final account of Diana Gradman, executrix of Isadore J. Gradman, late of Carroll County, Maryland, deceased, having been stated and submitted subject to and under the direction and control of the Orphans' Court of Carroll County on the 25th day of August, 1941, the day appointed and approved

by this Court, and the Court having carefully examined and considered the same, it is thereupon this 25th day of August, 1941, by the Orphans' Court of Carroll County, pursuant to the power and authority in it and conferred by Section 151 of Article 93 of the Code of Public General Laws of the State of Maryland, 1939, ordered and decreed that the said Account be and the same is hereby approved and ratified as stated, and that payment and distribution as therein provided and set forth shall forthwith be made by said Diana Gradman, executrix of Isadore Gradman, deceased, no cause to the contrary thereof either appearing or having been shown, although notice appears to have been duly given as heretofore provided." On the same day the Orphans' Court authorized the executrix to transfer to herself, as legatee, all of the property to which she then had in her possession as executrix; as under the administration account there was nothing left to be disposed of under the residuary clause of the will after the payment of debts, taxes and costs of administration. This result was effected by the ruling that the money in the savings accounts in the name of the testator passed to Diana Gradman under the first clause of the will. So on August 25, 1941, the Orphans' Court approved the administration account and under its jurisdiction authorized distribution thereunder.

Formerly personal representatives were not authorized to have a day appointed to made distribution under the jurisdiction of the court and the distribution was made at the peril of the representative. In order to protect personal representatives making distribution the law as now contained in Section 151 of Article 93 of the Code was enacted by the Legislature. This law was intended for the protection of personal representatives and there can be no doubt that where it is invoked and fully complied with it protects the representative. This section of the code has been referred to by this court in a number of cases and the case of *Garrett v. Kerney,* 107 Md. 501, 68 A. 1051, may be cited to illustrate its

operation and effect. The order of publication that went out to warn distributees to appear in the Orphans' Court on the 25th of August, 1941, could not affect parties entitled to notice who reside in this State. Philip D. Gradman, guardian of Morris Gradman, a distributee, during all the time that this estate was running in the Orphans' Court for Carroll County, lived in Baltimore City, and during the summer of 1941 lived in his home at Melrose, Carroll County. His sister-in-law, Diana Gradman, the executrix of the will of his brother, lived in the home with him. Apparently she did not know that he was guardian for Morris nor did she tell him anything at all of the proceedings in this estate in the Orphans' Court. When Philip D. Gradman learned of the proceedings in the Orphans' Court on August 25, 1941, he filed a petition as guardian for Morris Gradman, infant, and as brother and next friend of Lena Friedman and Ynty Gradman. He recites many of the facts previously referred to herein and that he was totally without notice of the action of the court. He prayed that the executrix answer the premises; that the order of court approving the first and final administration account and distribution thereunder by the executrix be annulled, revoked and set aside; that the executrix be required to make a proper distribution of the net residue of the estate of the deceased among the legatees expressly mentioned and designated in the will in her administration account which she shall be required to restate in this honorable court. To this petition the executrix filed a long and detailed answer, praying that the petition of Philip D. Gradman, guardian and next friend, be dismissed. From an order of the Orphans' Court dismissing said petition this appeal is taken.

Philip D. Gradman's guardianship extended "to all the property of the infant within this State." Code, 1939, Article 93, Section 159. He therefore had a legal right as guardian to appear in that court in any matter in which his ward was interested. If there had been no guardian for Morris Gradman, who resided in Lithuania,

the court had full power to appoint one for him under Section 210 of Article 93 of the Code of 1939. It was under this section that the guardian was appointed. "Orphans' courts make no distinction between resident and non-resident infants, if the latter come under their care." *Baldwin v. State,* 89 Md. 587, 600, 43 A. 857, 862.

A reading by the court of the will in connection with the administration account filed in this estate, it seems to us, would have raised a doubt as to the legal propriety of Diana Gradman, executrix, distributing to herself, individually, the whole estate after payment of taxes, funeral expenses and expenses in the Orphans' Court. A conflict of interest between the individual interest of the executrix and the distributees under the will was apparent.

In this case the testator named his three infant children and two sisters to participate in the distribution of his estate under the residuary clause of his will. The two sisters and one of the infants reside in Lithuania. Under the circumstances of this case we think the court should have appointed a qualified person to represent the infant without guardian and the two sisters who reside in Lithuania. We are of the further opinion, as Philip D. Gradman, the guardian of Morris Gradman, resided within the jurisdiction of the court, he should have been personally summoned to appear before the court on the 25th day of August, 1941. For these reasons the order of the court passed on the 1st day of July, 1943, dismissing the petition of the appellant, is reversed.

> *Order reversed, costs to appellant, and case remanded for proceedings in accordance with this opinion.*

SLOAN, C. J., filed the following dissenting opinion:

I have noted my dissent in this case; but inasmuch as it leaves you to guess why, I think I ought to briefly state my reasons, particularly, as I am setting up my

judgment against that of seven other members of the court, who are men of just as good judgment as I am. But this is one case where I differ with all of them because their judgment is against my convictions.

The majority have assigned two reasons for reversing the Orphans' Court of Carroll County.

1. That the bank deposit in the name of Isadore J. Gradman was his individual property when he died and not a part of the partnership.

These deposits of the decedent, Isadore J. Gradman, and his brother, Philip D. Gradman, who was his partner in the Melrose Canning Company of Carroll County, were advertised to the world by them as partnership property in their reports to Dun and Bradstreet prior to the death of Isadore Gradman as an asset of the partnership and designated on the statement made to Dun and Bradstreet as special deposits. After his death, the statement made by his surviving brother, Philip D. Gradman, who appears here as guardian for Morris Gradman, infant son of Isadore J. Gradman, on December 31, 1940, nearly three months after Isadore's death, shows, among the assets of the partnership, special deposits, $56,264.72.

The Orphans' Court in making distribution of the estate of Isadore Gradman treated it as partnership property and so made distribution of it to his widow, Diana Gradman.

If the partnership had become involved with creditors, it surely, in view of its statement, would have been estopped to deny that these "special deposits" did not belong to the partnership.

The majority opinion is to the effect that this is not partnership property and should be distributed in accordance with the other provisions of the will. In my opinion the effect of this is for this court to be writing a will for the testator. He said in the statements which he made to Dun and Bradstreet, which were available to all his creditors, that it was an asset of the partnership. This court says it was not; and, for this reason,

I say that the court's opinion is being substituted for his will.

2. On June 17, 1941, Diana Gradman, the executrix, filed a petition with the Orphans' Court, upon which an order was passed by the Orphans' Court of Carroll County, that a meeting of all persons entitled to a distribution, share, legacy, or residue in the estate of Isadore Gradman be held in said court on the 25th of August, 1941, in accordance with the provisions of Section 151 of Article 93 of the Code. The notice was duly published as required by law and on said day the executrix appeared in the Orphans' Court and there settled her account, making distribution under the direction of the court.

The minor son of Isadore J. Gradman, Morris Gradman, an infant, then nearly twenty-one years of age, had been notified by publication, along with the other non-residents, there being two sisters living in Lithuania who were named as beneficiaries.

Philip D. Gradman, unknown to the executrix, Diana Gradman, until after the distribution was made by her in the Orphans' Court, had been appointed guardian for Morris Gradman on December 2, 1940, by the same court. He qualified then for the purpose of receiving the proceeds of three policies of insurance, two of which were paid to him, which Isadore J. Gradman had taken out for the benefit of his son Morris, whom he had left in Lithuania many years before.

It is not disputed that the notice of the meeting of distributees by the executrix was proper in form and met every requirement of the statute, Section 151, Article 93, but this court bases its decision on the fact that personal notice of the order was not given to Philip D. Gradman, guardian of Morris Gradman.

Section 151 provides that non-residents shall be notified by publication and that publication is the service of summons upon such non-resident. If this were a suit for the partition and sale of real estate, the interest of a non-resident infant with a guardian in this State

could not be sold by service on the guardian; it requires the notice provided by law to the one interested, to wit, the infant, and it then becomes the duty of the guardian to appear for him or it becomes the duty of the court to appoint someone to represent him after he is summoned. The service on the guardian and not on the infant would be a nugatory act and would leave the interest of the infant out of the case even after the notice. There is no provision in the law for the appointment of a guardian *ad litem* in the Orphans' Court, even though it might become the duty of a guardian after the notice to come into court and represent his interest. The guardian does not take the place of the infant. He merely appears for or represents him. The notice was published in a Carroll County paper, and the guardian resided in Carroll County, yet he says he knew nothing of it.

The Orphans' Court derives all of its powers from the Legislature, and not from any court. Section 40, Article IV of the Constitution says: "They shall have all the powers now vested in the Orphans' Courts of the State, subject to such changes as the Legislature may prescribe."

This limitation is just as binding on this court as it is on the Orphans' Court; and when we say that Statute 151 impliedly provides for personal notice upon the guardian of a foreign distributee, creditor, or anyone interested in the distribution of an estate, something has been read into the statute that the Legislature did not put there, and I say which no other tribunal has the authority to write into the statute. This being so, in my opinion all of the interested parties were concluded by the account which was filed by the executrix in this case in pursuance of Section 151 and the order of the Orphans' Court in ratifying the account should have been affirmed by this court.