YELVERTON, Judge.
This appeal raises the issue of whether an abstracter, as a member of the public, has the right to remove original unbound acts and land records from a parish clerk of court’s office for the purpose of evading photocopying fees. The court below issued a ruling that, in effect, recognized the existence of such a right. We reverse.
FACTS
Charles Cummings is the defendant in this action. He is an abstracter with an office in Opelousas. As an abstracter, Cummings spends a lot of time in the St. Landry Parish Clerk of Court’s office in Opelousas examining public records.
Patti Hebert Kempf, the named plaintiff in this action, is the St. Landry Parish Clerk of Court and, ex-officio, the register of conveyances and recorder of mortgages. In her official capacity, Kempf initiated a policy whereby no unbound original acts could be removed from the clerk’s office.
Prior to Kempf assuming office, the previous clerk of court regularly permitted Cummings to remove unbound original acts from the clerk’s office. Cummings would then take them to his own office where he would photocopy the acts on his own photocopying machine.
Cummings by this means was able to copy documents for pennies a page. He profited from this arrangement by charging his clients 50$ a page as a copying fee. He testified that Kempf’s new policy caused him to lose the profit from the 50$-per-page photocopy charge.
On July 26, 1989, Cummings needed an unbound original act and decided to challenge Kempf’s new policy. Cummings obtained the following order from Judge Robert Brinkman, of the 27th Judicial District Court:
ORDER
The court being advised that Cummings Titles & ABSTRACTS is in need of the following styled record or document:
234751
IT IS ORDERED that the office of the Clerk of Court of St. Landry Parish, Louisiana release such record to Chakles W. Cummings or his duly designated representative, such record or document to be returned within Five (5) days time, or immediately upon call by the Clerk of Court.
Opelousas, Louisiana this 26 day of July, 1989.
(s) Robert Brinkman JUDGE
*139 The parties interpreted this order as authorizing the removal of the record from the clerk’s custody.
This ex parte order was rendered without notice or hearing. The order was not part of any lawsuit. There was no minute entry made of its issuance. No formality preceded its issuance. Manifestly, the order was signed simply on Cummings’ oral representation that he needed document No. 234751. As we shall explain later, this procedure was patently invalid, as such a shortcut remedy is nowhere sanctioned by the enforcement provisions of the public records law, i.e., La.R.S. 44:35. Nevertheless, this ex parte court order set in motion the following procedural events.
When she was confronted with this order, Kempf obtained from Judge Isom Guil-lory, Jr., another judge of the district, a temporary restraining order, together with a rule to show cause why Judge Brink-man’s ex parte order should not be dissolved, and why Cummings should not be enjoined from obtaining any other orders that would allow him to remove original documents from the clerk’s office.
The resulting stalemate and confusion over the procedural status of things lasted for several months. During this time all of the district court judges of the 27th Judicial District recused themselves from the case.
Then on January 26, 1990, Cummings filed a rule for contempt against Kempf for her failure to comply with Judge Brink-man’s ex parte court order of July 26,1989. The rule further alleged that Judge Guillo-ry’s temporary restraining order was wrongfully issued and that Cummings was entitled to damages.
On April 25, 1992, a hearing was held before Judge Carrol L. Spell, who was assigned to the case from outside the district. Judge Spell was of the opinion that Judge Guillory’s order did not operate to stay the effect of Judge Brinkman’s order. Accordingly, Judge Spell held that the denial of access to the originals directly violated Judge Brinkman’s original court order.
Judge Spell did not hold Kempf in contempt, but he ordered her to pay Cummings $277 for all of his photocopying costs accruing from August 26 to December 29. The court also cast Kempf with all court costs ($173) and all attorney’s fees ($250) that Cummings had to pay in order to have Judge Guillory’s order dissolved.
Kempf filed a suspensive appeal contending that the trial court erred in holding that Judge Brinkman’s ex parte order furnished a basis for an award of damages to Cummings. Kempf complained that the trial court erred by ordering her to pay Cummings’ damages, court costs and attorney’s fees.
OPINION
These two litigants are no strangers to this court. In a case entitled Cummings v. Kempf 570 So.2d 133 (La.App. 3rd Cir.1990), writ denied 575 So.2d 390 (La.1991), these very same parties argued before this court on the issue of whether Louisiana’s right to access laws gave Cummings the right to install his own photocopying machine in the clerk’s office. Relying on the Supreme Court’s decision in Title Research Corporation v. Rausch, 450 So.2d 933 (La.1984), we ruled for Cummings and permitted him to install his photocopying machine under certain conditions.
We gather from appellant’s brief and from Cummings own testimony that he is no longer satisfied with the right to merely have a copying machine in the clerk’s office. He now asserts that he has the additional right to remove unbound originals from the clerk’s office.
Louisiana’s law, concerning right to access of public records, is the same now as it was when the first case was before us. The pertinent statute is La.R.S. 44:31. It says:
Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record.
*140 The court in Rausch explained this statute as follows:
More specifically, R.S. 44:313 gives to “any person of the age of majority” the right to choose from four options: he may inspect the records; he may copy the records; he may reproduce the records; or he may obtain, from the custodian, a reproduction of the records.4 The statute is clear and unambiguous in its grant of these alternate rights, and it also is clear that the choice of which optional right to exercise rests with the one requesting the records and not with the custodian.
(footnotes omitted).
Rausch explained further that access to public records should be allowed wherever possible:
The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution. La. Const, art. 12, § 3. The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to see. To allow otherwise would be an improper and arbitrary restriction on the public’s constitutional rights.
On the other hand, LSA-C.C.P. art. 251 says in part that the “clerk of court is the legal custodian of all of its records and is responsible for their safekeeping and pres-ervation_” In addition, LSA-R.S. 44:32 A obligates the clerk to make records available to the public provided that it may do so and still maintain “such vigilance as is required to prevent alteration of any record while it is being examined....” In other words, C.C.P. art. 251 and R.S. 44:32 A permit the clerk to restrict access to public records when necessary for their proper care and protection.
This issue forces us to address two opposing tensions in Louisiana’s right to access laws. Specifically, we must weigh the Rausch case’s requirement of a liberal interpretation of R.S. 44:31 against the necessary safeguards imposed by C.C.P. art. 251 and R.S. 44:32 A.
Rausch addressed this tension as follows:
Legislatively balanced against the public's rights of access, it is the duty of the custodian to preserve the public records, and to ensure that nobody alters or destroys the records. This “vigilance” by the custodian, however, must be reasonable, and it must be by those means which are least intrusive on the right of access. Any restriction or limitation imposed by the custodian places the burden on the custodian to justify the restriction or limitation. R.S. 44:35(B).
Rausch at 937, 938.
In the facts of Rausch a clerk had denied a title research company permission to place a microfilm reducing machine in the clerk’s office. The court found that the clerk had not adequately proven justification for its decision. Thus, the court ruled in favor of the title research company.
Similarly, this court, in the first Cummings case, held that Kempf had failed to prove that she was “justified” (pursuant to R.S. 44:35 B) in forbidding Cummings from installing his photocopying machine. Accordingly, we found for Cummings. Cummings at 135.
In the present dispute, the issue goes one step further. That is, we must determine if the liberal interpretation that must be given to La.R.S. 44:31 gives the public the right to remove from the clerk’s office, for the purpose of copying, such documents as original acts of conveyance and mortgage.
We are of the opinion that R.S. 44:31 was never intended to extend that far. It is our holding that the liberality, with which the access to public records laws must be construed, necessarily ends at the doorway of the clerk’s office.
*141 Relying on R.S. 44:35 B, Rausch proclaimed that any restriction on the right of access to the public records must be justified by the custodian. La.R.S. 44:35 deals with the enforcement of the right to inspect or copy. Section 35(B) reads:
B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court.
When a document leaves the courthouse, it is outside of the control and the protection of the clerk of court. Common sense dictates that, under these circumstances, there is greater opportunity for damage or alteration. Hence we find that the mere removal of a public document from the clerk’s office is in itself justification by which the clerk may limit the public’s access to records as provided by LSA-R.S. 44:35 B, R.S. 44:32 A, and C.C.P. art. 251.
This interpretation of the law also appears to be the prevailing construction given by the clerks of court across the State of Louisiana. There are in the record 33 affidavits executed by parish clerks of court from around the state. Thirty-two were offered by Kempf and one was offered by Cummings. The clerks of court providing the 32 affidavits for Kempf attested that their policy was that under no circumstances were original acts to leave their office. The Acadia Clerk of Court provided an affidavit for Cummings that indicated originals were permitted to leave the office. We think it is of significance that, according to this record, the vast majority of clerks of court throughout the state interpret this as a justified restriction on the right of access. There is a rule of construction that, where a statute is ambiguous, a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation. Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976).
Having concluded that Clerk of Court Kempf was justified in instituting a policy of so limiting the public’s access to original records, we move finally to a consideration of whether the judgment for monetary damages in favor of Cummings has any basis in this record. In other words, can Kempf be legally responsible for the damages suffered by Cummings on account of her failure to comply with the ex parte order of Judge Brinkman. We conclude that the judgment cannot stand.
We are not here concerned with whether the disobedience of an invalid order can be grounds for contempt. Judge Spell did not find that Kempf was in contempt, so that issue is not before us. Our only concern is whether Kempf’s failure to comply with that one order of Judge Brinkman, involving one record, gave rise to an obligation to pay damages for all the other records that he could not take out of her office while this litigation was pending. The question almost answers itself.
As we stated earlier, the ex parte order was patently invalid. La.R.S. 44:35 A provides the enforcement procedure for implementing the right to inspect or copy records under the public records laws. The subsection reads:
A. Any person who has been denied the right to inspect or copy a record under the provisions of this' Chapter, either by a final determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney’s fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
*142 The remaining subsections B, C, D and E reveal that, before an order can be issued by the court to enforce the right, the person seeking to enforce the right to inspect or copy must file a suit, contradictorily against the custodian of the record, and that there must be a trial and a determination made of whether the right exists and whether the custodian arbitrarily or capriciously prevented the exercise of the right. The provisions of this statute are prerequisites to the rendition of any judgment against the custodian for damages, costs and attorney’s fees. The provisions of this statute were not complied with in the rendition of Judge Brinkman’s ex parte order. Since the entire basis of the judgment for damages is the claimed loss suffered by Cummings as a result of Kempf’s failure to comply with the ex parte order, the judgment must fall. Since Cummings had no right to remove the desired records, he could not have suffered damages.
Accordingly, the trial court’s decision is reversed entirely with all costs to be assessed against appellee.
REVERSED.