10 A.3d 1183

**Deane J. ALLEN, et al.**

v.

**Sharon J. RITTER, Esquire, Successor Personal Representative of the Estate of Roy Harry Allen.**

No. 2350, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 10, 2010.

Reconsideration Denied Feb. 4, 2011.

618

Elise Davis, Easton, for appellant.

Frederick R. Franke, Jr., Annapolis, & Sharon J. Ritter, Easton, for appellee.

Panel DEBORAH S. EYLER, GRAEFF, and ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.[1]

GRAEFF, J.

This appeal arises from a dispute regarding the distribution of the Estate of Roy Harry Allen (the "Estate"). Appellants, Robert L. Allen and Deane Judson Allen (the "Allen Brothers"), challenge the order of the Orphans' Court for Dorchester County requiring that they sign a release of claims against appellee, Sharon Ritter, Successor Personal Representative of the Estate.

---

1. Judge Christopher B. Kehoe did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.

On appeal, the Allen Brothers raise two issues for our review, which we quote:

1. Does Estates & Trusts Section 9–111 entitle a Personal Representative to demand and receive a sweeping release from the Appellants before she paid over to them the sums of money the Court had determined they were entitled to when it approved the First And Final Administration Account?

2. Did the Orphans' Court for Dorchester County, Maryland have the authority to order the Appellants to sign a sweeping release of liability to the Successor Personal Representative before they could secure payment of their respective shares of their father's estate that had been directed by the Orphans' Court when it approved the Successor Personal Representative's First and Final Administration Account?

For the reasons set forth below, we shall affirm the judgment of the Orphans' Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Roy Harry Allen died on January 28, 2005. At the time of his death, Mr. Allen had an estate totaling $298,266.76 and a valid will. Mr. Allen was survived by three children: Virginia Leitch; Deane Judson Allen; and Robert L. Allen.

On October 20, 2005, Virginia Leitch, who was named in her father's will as the Personal Representative of the Estate, opened the estate.[2] The parties agree that there was much acrimony among the decedent's three children over the administration of the Estate.[3]

Shortly after the Estate was opened by Mrs. Leitch, the Orphans' Court named Robert L. Allen as Co–Personal Rep-

---

**2.** Robert Allen was named in the will as the Alternate Personal Representative of the Estate.

**3.** The record contains 168 docket entries from the opening of the estate until the notice of appeal, activity which appellee states "suggests a litigiousness out of proportion to the size of the Estate."

resentative of the Estate. On February 26, 2008, due to conflict between Mrs. Leitch and the Allen Brothers, and pursuant to an agreement between the parties, Mrs. Leitch and Robert L. Allen were removed as Co–Personal Representatives, and Sharon Ritter was appointed Successor Personal Representative of the Estate.

After the appointment of Ms. Ritter, the controversy over the administration of the Estate continued. On April 30, 2008, Ms. Ritter filed a Petition for Reimbursement of Expenses, which the Allen Brothers opposed. This petition involved expenses related to the care of the decedent in the final weeks of his life. The Allen Brothers opposed payment of approximately $5,000 of these expenses, not on the ground that the expenses were not incurred, but on grounds relating to the timing when the checks cleared. After the court granted the Petition for Reimbursement, the Allen Brothers filed another motion to strike the order. In her opposition to this motion, Mrs. Leitch, the original Personal Representative and a beneficiary of the Estate, alleged that additional expenses and "avoidable disruption to the Estate" were being incurred "by reason of the multiple baseless allegations made by the Allen [B]rothers." Mrs. Leitch represented:

> In due course, Mrs. Leitch will petition this Court pursuant to Rule 6–141, to make an award against the Allen brothers in her favor & in favor of the Estate, of all of the expenses incurred by Mrs. Leitch & the Estate for the bad faith actions, filings & allegations of the Allen brothers who have acted & who continue to act in bad faith & without substantial justification. As that Rule provides, if parties wish to play games with this Court by acting in bad faith & without substantial justification so as to incur otherwise needless expense & delay for the other party(s), then in due course, those parties should be required to reimburse the other party(s) & the Estate for the expense thus incurred by those other parties & by the Estate.

On September 17, 2008, Ms. Ritter filed several additional petitions and a "First and Final Administrative Account" (the "Final Account") for the Estate, all of which the Allen Broth-

ers opposed. With respect to the Final Account, the Allen Brothers asserted, among other things, that they excepted to: (1) the payment of Virginia Leitch in reimbursement for expenses paid by her for the care of their father; and (2) the payment of attorney's fees and commissions to the Successor Personal Representative. On May 5, 2009, after a hearing, the Orphans' Court approved the Final Account filed by Ms. Ritter.

By correspondence dated June 10, 2009, Ms. Ritter requested that the Allen Brothers and Mrs. Leitch sign a release before she distributed the monies owed to them pursuant to the Final Account. The release contained the following language:

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned, Deane Allen, hereby acknowledges to have received from Sharon J. Ritter, Personal Representative of the Estate of Roy Harry Allen, deceased, being in full satisfaction of the distribution to the undersigned, as follows:

Cash: $71,333.76

and in consideration thereof the undersigned does hereby release, acquit, exonerate and discharge the said Sharon J. Ritter, Personal Representative, as aforesaid, her heirs, executors and administrators of and from all and every action, suit, claim or demand which could or might possibly be brought, exhibited or prosecuted against her, for or on account of her duties as Personal Representative of said estate arising from or in any way related to the administration thereof, and on account of such distribution, or any part thereof, hereby declaring myself fully satisfied, contented, and paid, as above specified. I do hereby verify and affirm under the penalties of perjury that I executed the foregoing Release for the purposes therein contained.[4]

---

4. The releases for the other two distributees were exactly the same, with the exception of the name and the exact amount to be distributed, *i.e.* Robert Allen—$71,273.76 and Virginia Leitch—$71,413.76.

Mrs. Leitch signed and returned the form to Ms. Ritter and received her distribution. The Allen Brothers, however, refused to sign the releases. In a letter from their attorney, they questioned Ms. Ritter's right to require such a release prior to distribution of the estate, and they indicated concern that Mrs. Leitch might institute further suit against them, stating that they did not want to "foreclose any recourse they may have against anyone else in this matter."

On July 21, 2009, counsel for Mrs. Leitch sent a letter to counsel for the Allen Brothers to allay their concern over future litigation and "in the hope that we can bring this estate to its long-overdue conclusion." Counsel for Mrs. Leitch explained:

> If, as Sharon understands your position, your clients' refusals to sign the required releases are based on concerns that Ms. Leitch will pursue further legal action against them, then that concern is misplaced. The Orphans' Court denied her motion for relief, the appeal time for that order has elapsed and that topic is now *res judicata*; meaning that such claims cannot be reraised.[5]

> Nor, might I add, is Ms. Leitch interested in pursuing any further claims. She presented her case, the Orphans' Court has ruled and that is the end of it. She simply wishes to complete and close the Estate and subject to that one concern, further disengage from your clients.

Nevertheless, the Allen Brothers did not sign the requested releases.

On September 21, 2009, Ms. Ritter filed a Petition for Release with the Orphans' Court, seeking a release from the beneficiaries prior to distribution of the estate funds. In support, she cited Md.Code (2001 Repl.Vol.), § 9–111 of the Estates and Trusts Article ("E.T."), which provides: "Upon making a distribution, a personal representative may, but is not required to, obtain a verified release from the heir or

---

**5.** It appears that the motion to which counsel was referring was a Request for Sanctions against the Allen Brothers, which the Orphans' Court denied when it approved the Final Account.

legatee." In the Petition, Ms. Ritter explained the procedural posture of the case and stated:

> The Personal Representative would like to distribute the estate funds and close this estate and has been ready and able to do so since early June when the time for filing appeals to this Court's Order of April 28, 2009 had passed. However, the Personal Representative is reluctant to distribute any assets to Robert and Dean[e] Allen because of their apparent refusal to sign the Release and the threat of further lawsuit made by [counsel for the Allen Brothers].

On September 29, 2009, the Orphans' Court issued a show cause order to the Allen Brothers, ordering them to show cause why they had not provided Ms. Ritter with a release. On October 20, 2009, the Allen Brothers filed an Answer to the Petition for Release and Show Cause Order. The Allen Brothers did not dispute the amount of Ms. Ritter's proposed cash distribution, but they argued that Ms. Ritter was not entitled to a release. They asserted that, because the court had ordered distribution of the residuary estate, the personal representative was protected "insofar as the distribution [was] concerned." They argued that the provision in E.T. § 9–111, providing for a release upon making a distribution, addressed a distribution "of tangible property and not a cash distribution of a residuary estate." Because Ms. Ritter did not distribute tangible property, the Allen Brothers argued, "Section 9–111 is not applicable to this case." [6]

On October 27, 2009, Ms. Ritter filed a Response to Answer to Petition for Release and Show Cause Order, arguing that the Allen Brothers' reliance on the protection afforded to a

---

6. The Allen Brothers further challenged the breadth of the release, stating that it "far exceeds the scope of having made a distribution of one-third of the residuary estate" to each of the Allen Brothers. Ms. Ritter disputed this contention, arguing that the release requested "was nearly identical to the forms provided in" a treatise on estate administration. *See* ALLAN J. GIBBER, GIBBER ON ESTATE ADMINISTRATION § 10.124 (2008). Appellants have not pursued on appeal any claim regarding the scope of the release, and therefore, we will not address that issue in this opinion.

personal representative who makes a distribution pursuant to a court order was misplaced because she did not apply for, and the court did not issue, a distribution order in this case. She also disputed the assertion that E.T. § 9–111 was limited to tangible property.

On November 10, 2009, the Allen Brothers filed a Further Answer to Petition for Release and Show Cause Order, asserting several of its earlier arguments, as well as the argument that the Orphans' Court had no authority to order distributees "to sign a release of the Personal Representative subsequent to [its] signing an order concerning distribution of the assets of an estate."

On November 10, 2009, the Orphans' Court ordered the Allen Brothers to sign the releases and return them to Ms. Ritter. This timely appeal followed.[7]

## STANDARD OF REVIEW

On appeal from a final judgment of the Orphans' Court, "the 'findings of fact of an Orphans' Court are entitled to a presumption of correctness.'" *Pfeufer v. Cyphers,* 397 Md. 643, 648, 919 A.2d 641 (2007) (quoting *New York State Library School Ass'n v. Atwater,* 227 Md. 155, 157, 175 A.2d 592 (1961)). An interpretation of law, however, is "not entitled to the same 'presumption of correctness on review: the appellate court must apply the law as it understands it to be.'" *Id.* at 648, 919 A.2d 641 (quoting *Comptroller of the Treasury v. Gannett Co. Inc.,* 356 Md. 699, 707, 741 A.2d 1130 (1999)).

## DISCUSSION

The Allen Brothers argue that the Orphans' Court is a court of limited jurisdiction, and there is no "express grant of

---

7. On January 5, 2010, the Orphans' Court granted Ms. Ritter's request to obtain counsel to represent her and ordered that any expenses associated with the appeal be paid from the Estate. On January 14, 2010, a request for a hearing on the issue was filed by the Allen Brothers, and on January 15, 2010, they filed a Request to Alter or Amend. The Court held a hearing on March, 23, 2010, and on April 13, 2010, it reaffirmed its decision allowing Ms. Ritter to obtain counsel.

power" to the Orphans' Court "to order distributees to sign a release to a personal representative to secure the distribution that the Orphans' Court has directed be made to distributees." They assert that "the question then becomes, does a personal representative have the statutory right to demand a release subsequent to an Orphans' Court approval of the final account," which they suggest would authorize the Orphans' Court to issue such an order "'incident to the fulfillment of the court's jurisdiction.'" The Allen Brothers would answer that question in the negative.

Ms. Ritter argues that, although the Orphans' Court is a court of limited jurisdiction, it "is limited by the subject matter not by the powers that it may exercise within the scope of this subject matter." She contends that the Orphans' Court "has whatever powers it needs to exercise in overseeing the administration of a decedent's estate." Ms. Ritter asserts that, pursuant to E.T. § 9–111, a personal representative has the right to insist on a release as a condition of making a final distribution, and the Orphans' Court properly enforced this statutory provision designed to protect a personal representative.

## A.

### Right of Personal Representative to Demand a Release

■ We start first with the question whether a personal representative has the right to demand a release prior to paying distributees that which the Orphans' Court has approved in a Final Administration Account. The statutory provision addressing a release is E.T. § 9–111. As indicated, § 9–111 provides: "Upon making a distribution, a personal representative may, but is not required to, obtain a verified release from the heir or legatee."

This statute was first enacted in 1969 in Article 93 of the Maryland Code. *See* 1969 Md. Laws, Chap. 3, 71.[8] It was

---

8. Article 93 was repealed in its entirety in 1974 and replaced by the "Estates and Trusts Article." *See* 19974 Md. Laws, Chap. 11, 19.

enacted in response to recommendations made by the Governor's Commission to Study and Revise the Testamentary Laws of Maryland, which was appointed by Governor Tawes in 1965. *See Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates* (1968) (hereinafter *"Henderson Commission Report"*).[9] In recommending the statutory provision regarding a release, the Henderson Commission noted the practice of personal representatives to obtain a release, stating: "This Section continues the present Maryland practice of not requiring releases, although personal representatives, out of caution, have, in the past, obtained releases in many instances." *Henderson Commission Report*, at 144. *See also* Shale D. Stiller and Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents*, 29 Md. L.Rev. 85, 115 (1969) ("If the personal representative desires a release, he may get one . . . ."); 31 Am.Jur.2d Executors and Administrators § 942 (2002) ("A common practice in distributions of estates is to obtain a receipt and release from distributees.").[10]

The question here is whether, pursuant to E.T. § 9–111, a personal representative has a right not merely to seek, but to require, a release prior to distribution of an estate. We found nothing in the *Henderson Commission Report* that sheds direct light on the answer to that question.

In construing the terms of the statute, we apply well-settled principles of statutory construction. As the Court of Appeals recently has stated:

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. . . . Statutory construction begins with the plain language of the statute,

---

**9.** The Chair of the Commission was the Honorable William L. Henderson, a former Chief Judge of the Court of Appeals. *See Henderson Commission Report*, Letter of Transmittal.

**10.** That releases are not unusual is evidenced by the available probate forms. *See* GIBBER ON ESTATE ADMINISTRATION, § 10.124; PHILIP L. SYKES, PROBATE FORMS IN MARYLAND § 408, at 341 (1941).

and ordinary, popular understanding of the English language dictates interpretation of its terminology.... When a statute's plain language is unambiguous, we need only to apply the statute as written, and our efforts to ascertain the legislature's intent end there."

*Carven v. State Ret. & Pension Sys.*, 416 Md. 389, 407–08, 7 A.3d 38 (2010) (quoting *Crofton Convalescent Ctr. v. Dep't of Health and Mental Hygiene*, 413 Md. 201, 216, 991 A.2d 1257 (2010)).

In the present case, the plain language of the statute is unambiguous. It provides that a personal representative "may ... obtain" a release. In other contexts, courts have construed statutes using language "may obtain" as conferring a "right" or "entitlement." *See, e.g., Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir.2006) (statute providing that individual "may obtain" medical assistance from provider of his or her choice confers an individual entitlement); *Williams v. Commission*, 28 Conn.Supp. 341, 260 A.2d 889, 890 (1969) (statute providing that a complainant aggrieved by the dismissal of his complaint "may obtain" review of the order provides a right to appeal); *Kempf v. Cummings*, 610 So.2d 137, 140 (La.Ct.App. 1992) (statute providing that a person "may ... obtain" a reproduction of a public record confers a right to inspect records). Similarly, we construe the plain language of the statute involved here, providing that the personal representative "may ... obtain" a release, as conferring the **right** to obtain a release prior to distribution.

Although the parties have not cited, and we have not found, any Maryland case specifically addressing this issue, our conclusion is supported by treatises and cases from other jurisdictions. At least one treatise writer has opined that a personal representative has the right to require a release prior to distribution, stating that "distributees of portions of the assets of an estate ... are required to execute and deliver to the executor or administrator releases" evidencing the payment or delivery of the assets. PHILIP L. SYKES, 2 MARYLAND PRACTICE: PROBATE LAW AND PRACTICE § 991, at 146 (1956). Similarly, another treatise explains: "The personal

representative may require a receipt or a release as a condition precedent to payment of a legacy or distributive share, which receipt or release discharges the representative from further liability, in the absence of impeaching circumstances such as fraud or mistake." 34 C.J.S. *Executors and Administrators* § 656.

Courts in other jurisdictions similarly have found that a personal representative is entitled to a release prior to making a distribution. *See Ford v. Wilson,* 85 A. 1073, 1077 (Del.Ch. 1913) (personal representative had a right to require a release from a distributee prior to making the final settlement of an estate); *Sterrett v. Nat'l Safe Deposit, Savings & Trust Co.,* 10 App.D.C. 131, 139 (1897) (recognizing that the administrator was amply protected if it made a distribution, but nonetheless was entitled to exact releases upon payment of distributions); *First Midwest Bank v. Dempsey,* 157 Ill.App.3d 307, 109 Ill.Dec. 130, 509 N.E.2d 791, 797 (trustee not liable for damages for a failure to distribute to a beneficiary who failed to sign a release and receipt prior to distribution), *appeal denied,* 116 Ill.2d 553, 113 Ill.Dec. 297, 515 N.E.2d 106 (1987).

In support of their contention that a personal representative does not have the right to obtain a release prior to making a distribution, the Allen Brothers point to E.T. § 9–112, arguing that this statute provides protection to a personal representative who makes a distribution pursuant to a court order, making a release unnecessary. E.T. § 9–112, provides, in part, as follows:

(a) Disagreement concerning distribution of tangible personal property.—If the personal representative cannot obtain agreement from all interested persons entitled to share in the distribution of the property, he may apply to the court to make distribution. The court shall designate a day and direct the giving of notice to all interested persons concerned. The court may appoint two disinterested individuals, not related to the interested persons to make an appropriate division for distribution, or recommend to the

court a sale of part or all of the property, and the court shall direct the distribution it considers appropriate.

\* \* \*

■ (c) Procedure when an interested person is not known.—In the event the personal representative has reason to believe that there may be one or more interested persons whose names or addresses are not known to him, or if it is not known to him if an interested person is still surviving, he may appoint a meeting of all interested persons to be held on a day the court designates.

(d) Notice of meeting.—The personal representative shall give notice to all interested persons known to him, and shall publish a notice of the meeting once a week in three successive weeks, in a newspaper of general circulation in the county of his appointment, stating the time, date, place, and purpose of the meeting which shall be held no sooner than 20 days after the first publication. The personal representative shall also take other steps and make other efforts to learn the names and addresses of additional interested persons as the court considers appropriate under the circumstances.

(e) Distribution of net estate.—On the date of the meeting, distribution of the net estate shall be made under the direction and control of the court. **Distribution by the personal representative in accordance with the direction of the court at the meeting protects and indemnifies the personal representative acting in obedience to it.**

(Emphasis added). As correctly pointed out by the Allen Brothers, cases applying § 9–112 confirm that, once the Orphans' Court has ordered distribution, "a personal representative is bound to make distribution in accordance with that court's order, since the personal representative is fully protected by it." *Webster v. Larmore,* 270 Md. 351, 354, 311 A.2d 405 (1973) (citing *Gradman v. Gradman,* 182 Md. 293, 301, 34 A.2d 433 (1943)).

Section 9–112, however, is inapplicable here. This statute applies in circumstances where "the personal representative

cannot obtain agreement from all interested persons entitled to share in the distribution of the property." E.T. § 9–112(a). If such a disagreement arises, the personal representative may apply to make distribution, and the court "shall designate a day" for a distribution and "direct the giving of notice to all interested persons concerned." *Id.* Pursuant to § 9–112(e), distribution of the estate is made on the date of the meeting "under the direction and control of the court."

The statute makes clear that, when the specific procedure set forth in the statute is followed, the personal representative is protected in making the ordered distribution. *See* E.T. § 9–112(e) ("Distribution by the personal representative in accordance with the direction of the court at the meeting protects and indemnifies the personal representative acting in obedience to it."). This protection, however, is limited to proceedings taken pursuant to the statute. *See State v. Hayes,* 221 Md. 308, 310, 157 A.2d 418 (1960) (an action at law will lie against an administrator if he distributes to the wrong persons, unless he avails himself of the protection afforded by the statute); *Hoffman v. Hoffman,* 88 Md. 60, 62, 40 A. 712 (1898) ("unless proceedings are taken [under § 9–112] so as to make the distribution the act of the Court," the personal representative is not protected).

In this case, the record does not reflect any proceedings pursuant to § 9–112. Indeed, at oral argument, counsel for the Allen Brothers conceded that there was no distribution pursuant to § 9–112 here. Rather, in accordance with E.T. §§ 7–302 and 7–303, Ms. Ritter filed, and the Orphans' Court approved, a Final Account of the Estate.[11]

---

11. Moreover, even if § 9–112 were applicable and protected the representative from a claim regarding the final distribution, nothing in that statutory provision suggests that it nullifies the right of a personal representative to obtain a release prior to distribution. To read the statutes in this manner would render § 9–111 superfluous. *See Pete v. State,* 384 Md. 47, 65–66, 862 A.2d 419 (2004) (statutes addressing the same subject should be read together and harmonized to avoid rendering " 'any portion meaningless, surplusage, superfluous or nugatory' ")

Pursuant to § 9–111, a personal representative "may ... obtain" a release from an heir or legatee. We hold that this language provides a personal representative with the right to require a release from a distributee. As such, Ms. Ritter had the right to require a release from the Allen Brothers prior to making a distribution pursuant to the Final Account.

## B.

### Right of Court to Order a Distributee to Execute a Release

■ The next question is whether, given the personal representative's right to require a release prior to distribution, the Orphans' Court had the power to order the Allen Brothers to sign the releases. As indicated, the Allen Brothers contend that an Orphans' Court is a court of limited jurisdiction, and therefore, it did not have such power.

E.T. § 2–102 sets forth the powers of the Orphans' Court as follows:

(a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

■ The Orphans' Court is a court of limited jurisdiction, and it "can only exercise such authority as is expressly provided by law." *Radcliff v. Vance*, 360 Md. 277, 286, 757 A.2d 812 (2000). As Ms. Ritter notes, "[t]hese limitations do not, however, prevent the orphans' courts from properly administering justice within their assigned sphere." *Id.* The Orphans' Court is "empowered to pass orders relating to the settlement and distributions of the estate." *Kaouris v. Kaouris*, 324 Md. 687, 695, 598 A.2d 1193 (1991). It is

(quoting *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 303, 783 A.2d 667 (2001)).

"empowered to decide such matters as are necessarily incident to the exercise of the powers expressly granted them." *Radcliff,* 360 Md. at 286, 757 A.2d 812. *See also Henderson Committee Report,* at 15–16 ("[T]he general statement of power, to wit, that the Court may 'pass such orders as in its discretion may be required in the course of the administration of a decedent's estate' is sufficiently broad so that it is not necessary to itemize separate powers . . . .").

Here, the Orphans' Court's order to the Allen Brothers to sign the requested releases prior to receipt of their distributive shares of the Estate was incident to the administration of the Estate. The court had approved the Final Account presented by Ms. Ritter, and the only thing impeding the distribution of the Allen Brothers' shares of the Estate was their refusal to sign the release, which, as indicated, Ms. Ritter had the right to obtain pursuant to § 9–111. Without a court order, the final distribution of the estate remained unsettled.

The order of the Orphans' Court here was not erroneous. It was incident to the exercise of its powers to administer estates. The court properly ordered the Allen Brothers to sign and return the release requested by Ms. Ritter pursuant to E.T. § 9–111.

**JUDGMENT OF THE ORPHANS' COURT FOR DORCHESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**